# CHARLESTON.

THOMAS B. STICKLEY *v.* W. R. THORN *et als.*

Submitted February 8, 1921.   Decided February 15, 1921.

1. REFORMATION OF INSTRUMENTS—*Deed Will Not Be Reformed Unless Mistake Was Mutual; Denied if Rights of Bona Fide Purchaser Have Intervened.*

   Equity will not reform and correct a deed on account of a mistake unless it is shown by clear, convincing and unequivocal evidence that the mistake was mutual; but if the rights of an innocent bona fide purchaser for value have intervened, the reformation and correction will not be made. (p. 677).

2. SAME—*Deed May be Reformed as to One Not a "Bona Fide Purchaser," But Who Has Knowledge of Mistake.*

   A purchaser of land who has knowledge of a mistake in the deed of his grantor, and of the true intent and design thereof, is not a bona fide purchaser for value, and stands in no better position than the original parties.   The deed may be reformed as to him.   (p. 679).

3. APPEAL AND ERROR—*Decree on Conflicting Evidence Not Reversed.*

   A decree of a circuit court based on conflicting evidence will not be reversed by this court, unless it is clear that the finding of the lower court is unwarranted by the facts.   (p. 679).

Appeal from Circuit Court, Randolph County.

Action by Thomas B. Stickley against W. R. Thorn and others.   Decree for plaintiff, and defendant named appeals.

*Affirmed.*

*A. M. Cunningham* and *James A. Bent,* for appellant.
*W. B. Maxwell* and *H. G. Kump,* for appellee.

LIVELY, JUDGE:

This appeal and supersedeas, obtained by W. R. Thorn, brings here for review a decree of the Circuit Court of Randolph County, entered on June 1, 1920, reforming and correcting a deed from T. B. Stickley and wife to A. P. and Virginia Flanagan, dated December 7, 1916, and estopping W. R. Thorn from claiming any of the land described in a deed from said Flanagans to him, dated September 27, 1917, except such as is described in the deed from Stickley to the Flanagans as reformed and corrected, and enjoining Thorn from trespassing upon the lands of Stickley east of the eastern line of the deed from Stickley to the Flanagans, as reformed and corrected.

Thomas B. Stickley owned about 44 acres of land in Randolph County near the city of Elkins and on December 7, 1916, conveyed to Virginia and A. P. Flanagan 4 acres and 158 poles lying in the interior of the 44 acre tract. A survey was made and stakes set in the presence of vendor and vendee at three corners of the land. There are only four corners, and the northwestern corner was on a hickory, about which there is no dispute. Afterwards, Purkey, the surveyor, prepared the deed and in drawing it made the mistakes complained of by the plaintiff. Sometime prior to this transaction, Stickley had made a deed to a portion of his lands lying on the south of the Flanagan lot to E. J. Evans. In surveying the Flanagan lot, prior to the making of the deed to him, Stickley, Flanagan and the surveyor began, as the southwest corner of the Flanagan lot, at a stake 16 1-2 feet from and north of the line of the Evans land, and ran a line parallel to the Evans tract and 16 1-2 feet therefrom easterly 27.32 poles to a stake 16 1-2 feet north of the Evans line; thence a northerly course 35.35 poles to a stake 1.9 rods west of a maple at the Stickley boundary line; thence N. W. 27.7 poles to a hickory; thence S. W. to the beginning. In drawing the deed, which he says he drew from memory, Purkey began at a stone, a corner in the Evans line, thence S. E. and running with the Evans line 27 poles to a stone 16 1-2 feet from Thorn's line; thence N. E. 35.85 poles to a stone, a corner one rod west of a maple, a corner in Stickley's boundary line; thence with said line W. 29.7 poles to a hickory; thence S. W. 25 poles

to the beginning.    This deed granted to Flanagan a right of way  over and through the grantor's lands to the land then conveyed.    On September 27, 1917 the Flanagans deeded the land to Thorn, using the same calls in the deed made to them by Stickley.    At the maple corner and running along the northern boundary of the Flanagan tract a road way had been procured and opened by Stickley, leading to the city of Elkins, after he had sold to the Flanagans; and sometime after Thorn had purchased the lot he began opening a road from the maple corner south along his eastern line, evidently for the purpose of having a road to the east of his eastern line to connect with the Stickley-Nestor road on the north at the maple corner, and to connect with another opened road which extended to the southern portion of his lot along the eastern boundary of the Evans land, and known as the Stickley road.    This work of opening the road consisted of cutting the brush and timber, and if extended south as started, would have taken and destroyed a "potato patch" on the land in the possession of and claimed by appellee.    Stickley then, on May 16, 1919, presented his bill to the judge of the circuit court, supported by affidavits, asking for a reformation and iorrection of his deed to the Flanagans and for an injunction against Thorn to prevent trespass and irreparable damage.    The potato patch seems to have been the "proximate cause" of the litigation.    The bill set out the mistakes in the calls of the deed to the Flanagans, and how they occurred; that said mistakes were mutual, and all the facts leading thereto; charged that Thorn knew of the mistakes fully before the purchase by him from the Flanagans; that he was shown the boundary lines and stakes set, marking the corners, and all knew the circumstances under which the mistakes occurred, and Thorn was not, therefore, an innocent purchaser; that he, Thorn, was committing trespass on plaintiff's land, destroying his timber, potatoes, etc. and causing irreparable loss etc., and prayed for a reformation and correction of the deed to the Flanagans, and for an injunction against Thorn, and for general relief.    The Flanagans and Thorn were made defendants; and the Flanagans answered on July 7, 1919, admitting the mutual mistake in the deed to them, corroborated the allegations of the bill, and admitted that the provision for

right of way given in the deed had been performed and accepted by the opening of the Stickley-Nestor road on the northern boundary by Stickley, and that Thorn was so informed when he purchased from the Flanagans; and that there was no road or right of way along the eastern line of the lot at any time, before or after his purchase. Thorn demurred to and answered the bill on Aug. 2, 1919. The answer denies all of the material allgations of the bill, and sets up a claim or right of way along the eastern line of the lot purchased by him from the Flanagans down to the Stickley-Nestor road, under the provision in the deed from Stickley to the Flanagans reading: "Said Stickley hereby grants unto said Flanagans a right of way over and through his lands to the land herein conveyed." On September 3, 1919 plaintiff filed an amended bill, setting out that it was the intention and agreement when the Flanagan deed was made that the beginning corner (the S. W. corner) should begin 16 1-2 feet north of the Evans line and that there should be a strip 16 1-2 feet wide between the northern line of the Evans tract and the southern line of the Flanagan tract, but that the scrivener in making the deed had made the mistake of beginning at a stone on the Evans line; that the mistake was not noticed by either party and was mutual; and that Thorn, when he purchased, was fully advised of the true boundary, and knew of the mistake in the calls of the deed when he purchased. Thorn demurred to, and answered, the amended bill. Flanagan answered, and general replications were made. Upon this state of the pleadings the parties went to proof.

The lower court properly overruled Thorn's demurrer to both the original and amended bill. The bill shows that Stickley could neither read nor write. He and the Flanagans and Purkey, the surveyor, went on the land and by actual survey measured the land and set stakes at each of the three corners; that in drawing the deed the scrivener made the mistakes complained of, and the mistakes were unknown to both the plaintiff and the Flanagans, and were mutual mistakes between them; and that the deed did not therefore carry out the true intent and agreement of the parties. It is charged that Thorn, before he purchased, was fully advised of these mis-

takes in the deed to the Flanagans.   The amended bill seeks
to correct and reform another line in the same deed for the
same reasons.   It was not foreign to the matters set out in the
original bill, in fact is closely and intimately linked therewith,
and cannot be considered as a new suit.   These bills allege
facts sufficient for reformation of a deed for mistake of the
scrivener, and as not conforming to the actual agreement of the
parties.   *Smith v. Owens,* 63 W. Va. 60.   The bills being
sufficient, it is at once apparent from the pleadings, that the
case depends upon the proof.

There can be no question that equity has jurisdiction to re-
form and correct a deed so as to make it conform to the agree-
ment of the parties, where the scrivener in writing the deed
has made a mistake.   *Melott v. West,* 76 W. Va. 739; *Herzog v.
Riley,* 71 W. Va. 651; *Knowlton v. Campbell,* 48 W. Va. 294.
Nor can it be questioned that a writing will not be reformed and
corrected so as to express the true agreement and intent of the
parties unless the proof that it does not do so is conclusive and
unequivocal; for the writing itself is evidence so strong, that
only direct, positive, convincing and unequivocal evidence will
be sufficient to reform it.    *Jarrell v. Jarrell,* 27 W. Va. 743;
*Robinson v. Braiden,* 44 W. Va. 183.    Has the plaintiff met
these·strict requirements of the law?    Purkey, the surveyor,
Stickley and Flanagan all swear positively that they began
at a stake 16 1-2 feet from the Earle corner; thence to a stake
1.9 rods west of a maple, still standing; thence in a northwestern
direction to the hickory; thence to the stake at the beginning
corner.    They also say that the deed was to be made to the
land within these stakes and hickory corner, and this was un-
derstood and agreed to by all of them before the deed was made.
This is not disputed.    Purkey says he made the mistakes in
drawing the deeds, giving as an excuse therefor that he drew
the deed from memory; that he did not refer to his field notes,
which showed the true corners as agreed upon by all, (the field
notes were in evidence) ; that in drawing deeds he usually called
for a stone where there was no fixed monument.    These three
witnesses also testify that it was the intention and agreement
that a strip 16 1-2 feet wide was to be left between the lot to be
conveyed to the Flanagans and the Evans lot.    The stakes were

actually placed at the corners as surveyed and, many witnesses testify that the stake placed at the corner 1.9 rods west of the maple was still standing within three or four months before their depositions were taken.    The suit was begun in May, and the depositions were taken in September:        Other witnesses testify to seeing the stakes at the corners after the sale to the Flanagans.    In short there is no conflicting evidence as to the true boundary of this land and of the intention and agreement in that regard between Stickley and the Flanagans.    The proof is clear, unequivocal and convincing, and meets the strictest test of the law.    As between Stickley and the Flanagans there could be no hesitancy in reforming the deed.    If they were the only parties concerned there would be no law suit. They agree.    But the rights of Thorn have intervened, and if he is an innocent *bona fide* purchaser for value, the deed cannot be reformed so as to affect him.    Is he an innocent purchaser?    Are there any equities between him and Stickley?

The rights of a purchaser depend upon whether he has had notice, and one purchasing land with knowledge of a mistake in the deed, stands in no better position than if he had been one of the parties to the deed.    "A *bona fide* purihaser of land is one who purchases for a valuable consideration, paid or parted with, without notice of any suspicious circumstances to put him upon inquiry."    *Carpenter Paper Co.* v. *Wilcox,* 50 Neb. 659.    Mistakes in the description of land may always be corrected against a party who buys with full knowledge of another's prior purchase of land from the same grantor.    One who purchases with full knowledge of prior equitable or legal rights is not a purchaser in good faith."    *Smith* v. *Schweigerer,* 129 Ind. 363.    "A. bought two lots of land, a larger and a smaller, from B, but, by mistake, the deed conveyed only the large lot. C., knowing that A. had bought the two lots, and that the deed to him had not been recorded, took a deed from B. of the small lot, and put it on record before A. recorded his deed. Held, that A. could maintain a bill in equity against B. and C. to have the mistake in the deed to him corrected."    *Rumrill* v. *Shay,* 110 Mass. 170.    "It is sufficient to authorize the reformation of a deed for a mistake as against a subsequent grantee, that he had notice of the first deed, and the fact that, by a mis-

take, it properly failed to describe the land will not aid such subsequent purchaser, and he will not be allowed to profit by the mistake." *Preston v. Williams,* 81 Ill. 176; *Haynes v. Seachrest,* 13 Iowa 455; *Adams v. Stevens,* 49 Iowa 363. We have examined the evidence touching the notice to Thorn of the mistakes in the Flanagan deed before he purchased from the Flanangans, and have come to the conclusion that he is not an innocent purchaser, and that he had sufficient notice to put him upon strict inquiry and investigation. The learned judge of the lower court analyzed the evidence on this point, and it may not be amiss to quote his summary here. "Different witnesses say that defendant Thorne had been shown the lines and stakes which marked the boundaries of the lot sold by Stickley to Flanagan, before he, Thorn, became a purchaser. Several witnesses say they showed him the stake 1.9 rods from the maple, and others say that they showed him the stakes along the Evans line, and that they told him that a road 16 1-2 feet was intended to be reserved along the Evans line. Thorn denies all this, but we think the proof is overwhelming that he did have such knowledge. There is an answer in Mr. Thorn's own testimony, which we think shows he had been informed that a road was to be reserved along the Evans line, and which shows that he had been shown all the corners, just as Flanagan, his grantors, swear he did. On page 91 of his testimony he was asked:

"Q. I want to know whether or not before you purchased this tract of land you had any talk with the plaintiff T. B. Stickley, as to the roadway to and from that land and adjoining about it. Just state whether you had or not?

"A. Had not at that time. You see I want to explain it. I stated it was before the talk I met him. When I came to buy this land, Mr. Flanagan came to me in the winter and wanted to sell this tract of land, and he said that Mr. Stickley told him that I had land adjoining it and that I might buy this land. Mr. Flanagan brought me the deed the same evening. No, Flanagan went and (1) showed me the corners, and I told him to bring me the deed, and (2) he showed me the roadway that was in the deed and showed me the corners of the tract, and I asked him to bring me the deed, and when he brought me

the deed, I saw there was (3) no reservation for a road given— that is saying where there was to be a road."

This answer upon analysis shows:

"1. That Thorn had been shown the corners to the land before he bought from Flanagan.

"2. That he had been shown the road, 'that was in the deed,' meaning, the right-of-way to and from the land granted by Stickley to Flanagan.

"3. When Flanagan brought Thorn the deed, he, 'saw there was no reservation for a road given—that is, saying where there was to be a road.' And his seeing there 'was no reservation for a road given in the deed' implies knowledge on his part that such a reservation was claimed on the part of Stickley, and Flanagan says he told Thorn that such a right existed in favor of Stickley.

"Counsel suggested to Thorn, when he made the above answer, that he was getting ahead of his question, that he did not believe witness intended to state that (as contained in the answer) and then witness in response to a question states that neither Flanagan or Stickley, nor any one else told him about the right-of-way along the Evans line. But the answer above quoted was made after plaintiff's amended bill was filed particularly alleging that there should be a right-of-way along the Evans line, and when the deed was brought to defendant he states that there was NO RESERVATION for a road given. This undoubtedly had reference to right-of-way along the Evans line. That Thorn was looking at the deed to ascertain whether A ROAD WAS RESERVED, is plain from his answer, because he admits he HAD BEEN SHOWN THE LINES by Flanagan, and is not disputed that the stakes showing the line along the Evans land stood 16 1-2 feet away from the Evans fence. This Thorn could plainly see, but he evidently wanted to know what the deed contained in this respect, and after inspecting the deed he says, 'there was no reservation for a road given.' Evidently he was looking for RESERVATIONS in the deed, and NOT for GRANTS. That clause which says, 'said Stickley hereby grants unto the said Flanagan a right-of-way over and through his lands to the land herein conveyed' could have no reference to a RESERVATION of a road in

favor of the grantor.    Thorn repeats in his answer above quoted that Flanagan showed him the corners to the land. This evidence shows that defendant Thorn had been shown the corners before he purchased, that he had been told that a roadway was INTENDED to be reserved along the Evans line, and after having seen the deed from Stickley to Flanagan it was easy with the knowledge he had for him to discover the mistake, and with such knowledge he cannot stand upon the deed made to him, it would be inequitable to permit this to be done.

"While the evidence to reform a deed must be established by evidence clear, convincing and free from doubt and not conflicting, relief will not be denied in a clear case made out by overwhelming evidence, simply because one of the parties, in his evidence controverts the fact of the mistake.    *Mellot* v. *West*, 76 W. Va. 739.    Here in the present case the testimony of other witnesses, together with the admission of the defendant show he had notice of the real boundaries of this tract before he purchased.    Under such circumstances, he is not an innocent purchaser, such as would allow him to rely strictly upon the calls in his deed.    Besides, this evidence clearly shows that Thorn requested Flanagan to make the deed to him with the exact calls in its as were contained in the deed from Stickley to Flanagan, and Flanagan swears that he told Thorn before his purchase that Stickley had excepted 'a strip up there' meaning a road along the Evans line.    Stickley distinctly stated that he also told Thorn before he purchased that he had excepted a road along the Evans land.    See *Holland* v. *Vaughn*, 120 Va. 324, 91 S. E. 122."

We do not find that Thorn has established his claim to a right-of-way along the eastern boundary of the Flanagan lot out to the Stickley-Nestor road.    Counsel for Thorn insist that the decree vested in Stickley exclusive use, title and control of the strip of land one rod wide along the Evans line between the defendant's lot as reformed and corrected, and that the court erred in enjoining appellant from entry on or use of it as a roadway.    We do not so understand the decree.

On consideration of the petition for rehearing, which insists that Thorn should be expressly given the right to use the strip of land one rod wide between the Evans line and the line of

Thorn lot 2 as reformed, in order to reach the Stickley road, and which insists that the decree of June 1st, 1920 prevents him from so doing, we have again examined the record and do not find that the use of this strip by Thorn is in controversy. Thorn averred, and sought to prove, that no such strip was intended to be reserved or that a mistake was made by the scrivener in drawing the deed. He asked no affirmative relief, if perchance he failed in his contention and the deed should be reformed and corrected: The decree does not enjoin Thorn from the use of this strip. It prohibits him from trespassing on lands of Stickley, "East of a line beginning at a stake 16 1-2 feet north of E. J. Evans line and 16 1-2 feet from a parcel of land conveyed to W. R. Thorn by L. D. Wees and wife, thence north 14° 45′ E. 35.35 poles to a stake 1.9 rods west of a maple, a corner in said Stickley's boundary line." This prohibition has no reference either by terms or implication to the one rod wide strip north of the Evans line and south of the Thorn lot 2 as reformed, and surely Thorn would not be in contempt of this decree, as intimated, if he should use that strip. We repeat that we do not so understand or construe the decree. It is stated by counsel for Thorn that he, Thorn, has the right to use this strip, and that the plaintiff Stickley, his counsel and the court admit that he has. If that be true, there is no controversy over the use, and no basis for litigation concerning it.

We affirm the decree of the lower court entered on the 1st day of June, 1920.

*Affirmed.*