689 S.E.2d 247

**Betty Lou Zirkle CARPENTER, Plaintiff Below, Appellee,**

v.

**Shirley Blaniar LUKE, Defendant Below, Appellant.**

No. 34497.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 2009.

Decided Sept. 24, 2009.

Julie Gower Romain, Fairmont, WV, for the Appellant, Shirley Blaniar Luke.

Aimee N. Daugherty, Edmund L. Wagoner, Steptoe & Johnson PLLC, Clarksburg, WV, for the Appellee, Betty Lou Zirkle Carpenter.

PER CURIAM:

The defendant below and appellant herein, Shirley Blaniar Luke (hereinafter referred to as "Ms. Luke"), appeals from an order entered December 18, 2007, by the Circuit Court of Harrison County. By that order, the circuit court denied Ms. Luke's motion to alter or amend judgment and motion for a new trial. In the underlying case, the circuit court entered judgment as a matter of law in favor of the plaintiff below and appellee herein, Betty Lou Zirkle Carpenter (hereinafter referred to as "Ms. Carpenter"), on the issue of the disputed ownership of certain real estate. The remaining issues of Ms. Luke's claims of adverse possession, a prescriptive easement, and unjust enrichment were submitted to the jury and resulted in a jury verdict in favor of Ms. Carpenter. Based upon the parties' arguments, the record designated for our consideration, and the pertinent authorities, we affirm the decisions of the circuit court.

## I.

## FACTUAL AND PROCEDURAL HISTORY

This case involves a dispute over the ownership of real property. Ms. Carpenter filed a declaratory judgment action in 2006, seeking a judicial determination that she is the owner of certain real estate. Both Ms. Carpenter and Ms. Luke claim ownership of the tract of land.

As evidenced by the record submitted in this case, the disputed property is located along State Route 3 in Harrison County, West Virginia. In 2005, Ms. Carpenter inherited property on the eastern side of the route when her father died. Ms. Carpenter's father had owned his property since 1960. The 1960 deed described the land as

[b]eginning at the middle of the public road and running thence N. 77.5 E. 5.48 poles to a stake; S. 15 E. 10.72 poles to the middle of said road; thence with the meanders of said road S. 75 W. 4.88 poles; thence N. 17.5 W. 10.32 poles to the beginning, containing 55 square poles, and being the same lot that was conveyed ... by deed dated April 10, 1947[.]

Ms. Luke owned and occupied property situated opposite from Ms. Carpenter's property. The property inhabited by Ms. Luke was on the western side of State Route 3. Ms. Luke's father had purchased the property in 1972 and had conveyed it to her in 1988. The land description in the deed conveyed "a certain tract or parcel of land situate in the Village of Peora, Eagle District, Harrison County, West Virginia, containing two acres and twenty-six square poles, and being the same real estate which was conveyed ... by deed dated September 21, 1949[.]" The testimony introduced at trial averred that no deed in Ms. Luke's chain of title after 1922 contained a metes and bounds description of her property. The only descriptions were in terms of area and by reference to the prior deed in the chain.

Complicating this case is the fact that the public road's location was moved in 1922. There is no dispute that Ms. Carpenter owns the property on the eastern side of current State Route 3 and that Ms. Luke owns a portion of property on the western side of current State Route 3. However, the disagreement arises over a portion of real estate that is also located on the western side of State Route 3, and is adjacent to Ms. Luke's undisputed portion of property. Ms. Luke claims that the disputed property is hers because she received it from her father who was a bona fide purchaser of the same. Alternatively, Ms. Luke claims that she acquired the disputed property through adverse possession and/or a prescriptive easement. Conversely, Ms. Carpenter claims title to the disputed property through the description in the deeds in her chain of title. While the land description in her chain of title references a property boundary line in the middle of the public road, Ms. Carpenter argues that the public roadway was moved in 1922 and that the

last deed in the chain of title that referenced the property by a metes and bounds description was in 1916. Ms. Carpenter contends that because the current land descriptions are the same as those contained in the 1916 deed, prior to the 1922 relocation of the road, the reference to the "public road" in the current deeds references the public road as it existed prior to 1922.

During the underlying case, both parties moved for summary judgment following discovery. The lower court denied both motions for summary judgment, and the case proceeded to a jury trial. At the conclusion of the testimony and evidence, the lower court entered judgement as a matter of law in favor of Ms. Carpenter, finding that she was the title owner of the real estate. The issues remaining for jury consideration were Ms. Luke's alternative claims of adverse possession, prescriptive easement, and unjust enrichment. There was conflicting testimony at trial regarding which party actually used the disputed tract. The jury returned a verdict in favor of Ms. Carpenter on these claims, finding that Ms. Luke had not acquired ownership of the property through either adverse possession or a prescriptive easement. Further, the jury found no unjust enrichment. Ms. Luke filed a motion to alter or amend judgment and a motion for a new trial, both of which were denied. It is from these rulings that Ms. Luke now appeals to this Court.

## II.

### STANDARD OF REVIEW

■ This case is before this Court on appeal from the circuit court's order denying Ms. Luke's motion to alter or amend judgment and a motion for a new trial pursuant to West Virginia Rule of Civil Procedure 59(e). As this Court has previously explained,

" '[t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.'

Syllabus point 1, *Wickland v. American Travellers Life Insurance Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998)." Syllabus point 2, *Bowers v. Wurzburg*, 205 W.Va. 450, 519 S.E.2d 148 (1999).

Syl. pt. 1, *Alden v. Harpers Ferry Police Civil Serv. Comm'n*, 209 W.Va. 83, 543 S.E.2d 364 (2001).

■ One of the underlying rulings involved granting a motion for judgment as a matter of law under Rule 50 of the West Virginia Rules of Civil Procedure. We have held:

"The appellate standard of review for the granting of a motion for a [judgment as a matter of law] pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a [judgment as a matter of law] when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a [judgment as a matter of law] will be reversed.' Syllabus Point 3, *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996)." Syl. pt. 5, *Smith v. First Community Bancshares, Inc.*, 212 W.Va. 809, 575 S.E.2d 419 (2002).

Syl. pt. 1, *Estep v. Mike Ferrell Ford Lincoln–Mercury, Inc.*, 223 W.Va. 209, 672 S.E.2d 345 (2008). In addition to the trial court's grant of a judgment as a matter of law, we are asked to review the lower court's denial of the motion for a new trial. In that respect, this Court applies an abuse of discretion standard:

Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). Mindful of these applicable standards, we proceed

to consider the arguments set forth by the parties.

## III.

## DISCUSSION

On appeal before this Court, Ms. Luke argues that the circuit court erred in denying her motion to alter or amend judgment and her motion for a new trial. Ms. Luke asserts that Ms. Carpenter's claim to the property through an unrecorded 1922 document is improper and, further, Ms. Luke contends that her father was a bona fide purchaser from whom she received her claim to the land in question.[1] In response, Ms. Carpenter avers that the circuit court was correct in its decision that Ms. Carpenter is the record owner of the disputed portion of land.

Dispositive of this issue is the interpretation of the two deeds through which each party claims ownership of the subject property. In this case, after all of the evidence was submitted and the testimony was heard, the trial judge determined that Ms. Carpenter was the title owner to the disputed property. Upon review of the record, this Court agrees with the decision of the lower court.

 At the outset, we note that the general rule is that " '[a] valid written instru-

ment which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.' Syl. pt. 1, *Cotiga Development Company v. United Fuel Gas Company,* 147 W.Va. 484, 128 S.E.2d 626 (1963)." Syl. pt. 1, *Sally–Mike Props. v. Yokum,* 175 W.Va. 296, 332 S.E.2d 597 (1985). "In the construction of a deed or other legal instrument, the function of a court is to ascertain the intent of the parties as expressed in the language used by them." *Davis v. Hardman,* 148 W.Va. 82, 89, 133 S.E.2d 77, 81 (1963) (internal citations omitted). Further guidance is provided in the principle that,

> "[i]n construing a deed, will or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from doubt, unless to do so will violate some principle of law inconsistent therewith." Pt. 1, syllabus, *Maddy v. Maddy,* 87 W.Va. 581[, 105 S.E. 803 (1921) ].

Syl. pt. 5, *Hall v. Hartley,* 146 W.Va. 328, 119 S.E.2d 759 (1961). *Cf.* Syl. pt. 9, *Paxton v. Benedum–Trees Oil Co.,* 80 W.Va. 187, 94

---

1. In the underlying case before the circuit court, Ms. Luke also argued, in the alternative, that if it was determined that she was not the title owner of the land, that she had acquired the land through adverse possession or a prescriptive easement. She also asserted a claim for unjust enrichment due to the improvements she alleged she made to the property. After hearing all of the evidence, the jury found adverse to Ms. Luke and in favor of Ms. Carpenter on all of the claims submitted to it. However, these issues were not assigned as error before this Court, were not briefed, and were only mentioned during oral arguments before this Court as a result of direct questions from the bench. Significantly, when asked at oral argument before this Court if this was a case about adverse possession, Ms. Luke's counsel responded that it was not. Rather, counsel stated that it was a case of a bona fide purchaser.

While some of the relevant facts regarding the alternative claims are intertwined within her legal proposition surrounding title ownership pursuant to a deed, the alternative legal issues are not set forth or adequately briefed so as to bring them before this Court for consideration. *See State v. LaRock,* 196 W.Va. 294, 302, 470 S.E.2d

613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal. *State v. Lilly,* 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) ('casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal'). We deem these errors abandoned because these errors were not fully briefed."). *Accord In re Edward B.,* 210 W.Va. 621, 625 n. 2, 558 S.E.2d 620, 624 n. 2 (2001) ("The defendants' petition for appeal cited as error the circuit court's application of the five year statute of limitations to this case. However, the defendants did not address that issue in their brief and therefore have abandoned that assignment of error") (internal quotations and citation omitted); Syl. pt. 6, *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."). Thus, the issues of adverse possession, prescriptive easement, and unjust enrichment are not before this Court and will not be addressed by this opinion.

S.E. 472 (1917) ("Extrinsic evidence will not be admitted to explain or alter the terms of a written contract which is clear and unambiguous.").

Ms. Carpenter's father had owned his property since 1960, and it was inherited by Ms. Carpenter in 2005 when her father died. The 1960 deed, which is the source of Ms. Carpenter's ownership claim of the subject land, states as follows:

> Beginning at the middle of the public road and running thence N. 77.5 E. 5.48 poles to a stake; S. 15 E. 10.72 poles to the middle of said road; thence with the meanders of said road S. 75 W. 4.88 poles; thence N. 17.5 W. 10.32 poles to the beginning, containing 55 square poles, and being the same lot that was conveyed . . . by deed dated April 10, 1947[.]

An examination of the deeds in the chain of title to this land illustrates that the description of the land is identical in all of the deeds submitted into the record. The oldest deed submitted is dated 1919, contains the identical land description, and references that it is the same property conveyed in a 1916 deed. Likewise, Ms. Luke's father had purchased his property in 1972, and conveyed it to her in 1988. The 1972 deed that is the origin of Ms. Luke's claim to ownership purports to convey "a certain tract or parcel of land situate in the Village of Peora, Eagle District, Harrison County, West Virginia, containing two acres and twenty-six square poles, and being the same real estate which was conveyed . . . by deed dated September 21, 1949[.]"

■ It is clear that Ms. Carpenter owns land on the eastern side of the public road and that Ms. Luke owns property on the western side of the public road. This case concerns a small piece of land, also on the western side of the public road, whose ownership is claimed by both parties. Based on the descriptions in the deeds, Ms. Luke argues that the shared boundary line is the "middle of the public road" and that no document states that any property lines cross the public road as would have to be the case if this Court accepted Ms. Carpenter's description of the property lines. Ms. Carpenter responds that the public road was moved in 1922 and, because the land descriptions in the deeds do not change after 1922, the "middle of the public road" described in the deeds is the public road as it existed prior to 1922. In its simplest terms, this case revolves around the context associated with the phrase "middle of the public road" set forth in the deed description.

■ To illustrate the change in the road location, Ms. Carpenter submitted a December 1922 plat titled "Section of Robinson Run–Peora Road through Property of Chas L. Ashcraft and Others," which was completed by the Office of the County Road Engineer, Clarksburg, West Virginia. Ms. Luke seizes on this document and argues that it was an unrecorded document and, as such, it cannot defeat her claim that her chain of title resulted from her father's status as a bona fide purchaser who had no way of knowing of the existence of the 1922 plat. However, her reliance is misplaced. W. Va.Code § 40–1–9 (1963) (Repl. Vol. 2004) states that

> [e]very such contract, every deed conveying any such estate or term, and every deed of gift, or trust deed or mortgage, conveying real estate shall be void, as to creditors, and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county wherein the property embraced in such contract, deed, trust deed or mortgage may be.

The document showing the relocation of the road was not a contract or deed conveying real estate. It transferred no property. It was merely a document showing a public road in its old location and new location. Thus, there was no requirement that it be recorded. The movement of the road did not change or affect the boundary lines of the property owned by each party either through devise or conveyance. Thus, Ms. Luke's argument that this unrecorded document cannot be used to thwart her claim that her father was a bona fide purchaser without notice is completely without merit.

■ Moreover, we note that Ms. Luke's father did not qualify as a bona fide purchaser of the disputed tract of land. A bona fide purchaser of land is "one who

purchases for a valuable consideration, paid or parted with, without notice of any suspicious circumstances to put him upon inquiry." *Stickley v. Thorn*, 87 W.Va. 673, 678, 106 S.E. 240, 242 (1921) (internal citations omitted). *See also Simpson v. Edmiston*, 23 W.Va. 675, 680 (1884) ("[A] *bona fide* purchaser is one who buys an apparently good title without notice of anything calculated to impair or affect it[.]"); Black's Law Dictionary 1355 (9th ed. 2004) (defining "bona fide purchaser" as "[o]ne who buys something for value without notice of another's claim to the property and without actual or constructive notice of any defects in or infirmities, claims, or equities against the seller's title; one who has in good faith paid valuable consideration for property without notice of prior adverse claims."). As previously held by this Court, and more recently reiterated, " '[a] *bona fide* purchaser is one who actually purchases in good faith.' Syl. pt. 1, *Kyger v. Depue*, 6 W.Va. 288 (1873)." *Subcarrier Communications, Inc. v. Nield*, 218 W.Va. 292, 300, 624 S.E.2d 729, 737 (2005). As this opinion explains, Ms. Luke's father purchased only the land described in his deed of conveyance. The disputed portion of land was not part of his deed description but, instead, was part of the land described in Ms. Carpenter's chain of title. Thus, Ms. Luke's father could not have been a bona fide purchaser of land that was not included in his property description but was, instead, included in the property description of another tract of land.[2]

In support of her position before the lower court, Ms. Luke submitted a survey showing her boundary line as being the middle of the presently existing public road. However, Ms. Luke did not present any expert testimony, nor did she call the surveyor to testify. Before the lower court, Ms. Carpenter also submitted a property line survey, showing that the current road crosses through her land, leaving a 2,234 square foot portion of her property on the western side of the current road and adjacent to Ms. Luke's undisputed land. Additionally, Ms. Carpen-

ter presented her expert, David L. Jackson, who had completed the survey on her behalf.

During Mr. Jackson's testimony, he explained that "when we trace the deeds back the deed for the Carpenters went back prior to 1922 with basically the same description in it." He stated that it is quite common for a surveyor to find that a road used as a marker or call in a deed has either been moved or no longer exists. Relying on the calls that they were able to find still in existence from the description of the land, Mr. Jackson testified that "the deed calls of the Carpenter[s] [were] consistent with the location of the old roadbed and no[t] with the relocated position for the road." He further elaborated his point as follows:

Q. When you have, when you encounter something like this say for instance that you hadn't had that [1922] plat and you go and someone calls for the location of a road or a monument or something like that as one of the boundary lines, do you just take that as a way to start?

A. Basically you are getting into an area where what is called for is the record call. Record calls which is basically when a deed calls for a road location, is calling for the road location as the date of that deed and basically you are trying to look for consistencies for where you believe that road was as of the date of that deed and for the deed calls.

Q. Okay, so if you notice that the deed called for the same location throughout time would you check to see whether or not anything happened to that road or monument, I mean I guess it is not just a road, it could be a maple tree or a rock or anything like that, is that fair?

A. Yeah, you are trying to find the location of the road and in this particular case it was without the plat showing that the old roadbed was located to the southwest of the current Route 3. The only thing that you would have had would have had to be some distances in the Carpenter

**2.** As evidenced by the record in this case, Ms. Luke's father's deed merely described the land as "containing two acres and twenty-six square poles, and being the same real estate which was

conveyed[.]" This same description was followed in the chain of title prior to the relocation of the road in 1922.

description placing it over there and it may have been a difficult task.

Later in his testimony, Mr. Jackson was asked whether, "in cases like this where the road has in fact moved[,] would that change the boundary lines?" He responded as follows:

No, in my opinion the boundary would be where the road was at the time of the deed so in the case you are talking about a deed that was dated 1960 or 16 or earlier and the road was relocated in 1922 so the boundary would be where it was called for in 1916 and in my opinion again the only thing that would change would be if there was a conveyance.

. . . .

Q. And as you just discussed if the descriptions, you know, as far as right here at the public road and the area are the same throughout the years and the boundary line didn't change, is that what you basically indicated? That when the road moved it didn't change the boundary line?

A. That is correct. You try to reestablish the road in a position that is called for as of the date of the deed.

Q. Okay and that 1916 deed conveying the same property as the 1960 deed, is that correct?

A. That is correct.

Further explanatory testimony was elicited on cross-examination by opposing counsel with the following exchange:

Q. Mr. Jackson, when you testified earlier that if you did not have that [1922] plat that had been provided to you by Ms. [Carpenter] then the common practice is to start the survey or define the boundary where it calls for a roadway, to use the roadway that was placed as of the day of the deed was written, that is correct, isn't it?

A. In this case the—you have something that is in conflict with the current location of the roads which are basically the record distances for the Carpenter description would not fit with where the current road was. It is pretty clear that it takes it across the road. What helps clarify that is the [1922] plat because then you

have two pieces of information that are consistent. You have the bearings and distances on the Carpenter description as well as where the plat showing the location of the older road. Lacking that plat would have—it would have been [sic] the chore more difficult but when you have the two pieces of information that is what a surveyor does. He looks at everything he can get his hands on and you take it as a whole. You evaluate it as a whole.

Q. Is it common practice, sir, to begin a survey when the boundary calls for—to begin at the middle of the public road is it common practice to begin with or do the survey based upon the public road that is in place on the deed—on the date the deed is written?

A. On the date the deed is written. That is correct. That is what you are trying to reestablish is the road position at the date of the deed.

Q. Thank you sir. When was this property deeded to Mr. Zirkle?

A. I don't know for sure. It may have been trying to get off memory off of that last deed it may have been in the '60's.

Q. Okay, does 1960 sound right?

A. It sounds right.

Mr. Jackson further explained that, "you have to look at the entire chain of title because when I am referring to a date of the deed is when that description originally came out of a larger piece of ground which again is prior to 1922."

Based on the record evidence submitted and the testimony of the only expert, the lower court was correct to enter judgment as a matter of law, finding that the deeds of title show that Ms. Carpenter is the owner of the disputed piece of property. The fact that the road was moved in 1922 did not change the property boundary lines and does not subtract from the land that is Ms. Carpenter's. Because the recent deeds refer only to the start of the property line and then continue to convey that which had been previously conveyed, the deeds do not reference the public road as it currently exists. Rather, their reference to the public road is the public road as it existed prior to the move in 1922. Thus, the circuit court was correct in

finding Ms. Carpenter to be the title owner of the land.

There simply is no way to find Ms. Luke owns the land under any deed construction, and there was no reason to submit the issue to the jury. *See* Syl. pt. 5, *Davis Colliery Co. v. Westfall*, 78 W.Va. 735, 90 S.E. 328 (1916) ("Where the right of a party to recover, in ejectment, depends solely upon the construction of his deed, in the light of the undisputed facts, the question is one of law for the court, and not one of fact for the jury."), *see also* Syl. pt. 2, *Prickett v. Frum*, 101 W.Va. 217, 132 S.E. 501 (1926) ("Where the description of a parcel of land in a deed is certain, and buttressed by documentary evidence, parol testimony cannot be used to enlarge the scope of the descriptive words so as to include another and distinct parcel owned by the grantor. In such case the construction of the deed is for the court, and not for the jury."). The circuit court correctly denied the motion to alter or amend the judgment and the motion for a new trial; therefore, the lower court's rulings are affirmed.

## IV.

### CONCLUSION

Based on the foregoing, the decisions of the circuit court are affirmed.

Affirmed.