IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0216

_____

FILED
November 17, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LEONARD D. CARR and GLORIA J. CARR,
Petitioners

v.

LYSLE T. VEACH, JR., WHITNEY SLOANE VEACH,
SYDNEY MORGAN VEACH, and BAILEY A. VEACH,
Respondents

_____

Appeal from the Circuit Court of Grant County
The Honorable Lynn A. Nelson, Judge
Civil Action No. 16-C-1

AFFIRMED

_____

Submitted: September 16, 2020
Filed: November 17, 2020

Nathan H. Walters, Esq.                    Jason R. Sites, Esq.
Walters & Heishman, PLLC               Sites Law Firm, PLLC
Moorefield, West Virginia                  Keyser, West Virginia
Counsel for Petitioners                       Counsel for Respondents

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a de novo review."  Syllabus Point 1, *Public Citizen, Inc. v. First National Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996).

2.      " Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence."  Syllabus Point 4, *Sanders v. Georgia-Pacific Corporation*, 159 W. Va. 621, 225 S.E.2d 218 (1976).

3.      "A person claiming a prescriptive easement must prove each of the following elements: (1) the adverse use of another's land; (2) that the adverse use was continuous and uninterrupted for at least ten years; (3) that the adverse use was actually known to the owner of the land, or so open, notorious and visible that a reasonable owner of the land would have noticed the use; and (4) the reasonably identified starting point, ending point, line, and width of the land that was adversely used, and the manner or purpose

i

for which the land was adversely used." Syllabus Point 1, *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010).

4.    "A person claiming a prescriptive easement must establish each element of prescriptive use as a necessary and independent fact by clear and convincing evidence, and the failure to establish any one element is fatal to the claim." Syllabus Point 3, *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010).

5.    "[A]ll of the elements of prescriptive use, including the fact that the use relied upon is adverse, must appear by clear and convincing proof." Syllabus Point 2, in part, *Beckley National Exchange Bank v. Lilly*, 116 W.Va. 608, 182 S.E. 767 (1935).

6.    "In the context of prescriptive easements, the term "adverse use" does not imply that the person claiming a prescriptive easement has animosity, personal hostility, or ill will toward the landowner; the uncommunicated mental state of the person is irrelevant. Instead, adverse use is measured by the observable actions and statements of the person claiming a prescriptive easement and the owner of the land." Syllabus Point 4, *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010).

7.    "In the context of prescriptive easements, an "adverse use" of land is a wrongful use, made without the express or implied permission of the owner of the land. An "adverse use" is one that creates a cause of action by the owner against the person

ii

claiming the prescriptive easement; no prescriptive easement may be created unless the person claiming the easement proves that the owner could have prevented the wrongful use by resorting to the law." Syllabus Point 5, *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010).

8.    "In the context of prescriptive easements, a use of another's land that began as permissive will not become adverse unless the license (created by the granting of permission) is repudiated." Syllabus Point 6, *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010).

9.    "The burden of proving adverse use is upon the party who is claiming a prescriptive easement against the interests of the true owner of the land." Syllabus Point 7, in part, *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010).

**Armstead, Chief Justice:**

Leonard D. Carr and Gloria J. Carr ("Petitioners") appeal the Circuit Court of Grant County's order denying their motion for a new trial and their renewed motion for a new trial following a bench trial. In that trial, Petitioners sought a finding that they maintained a right-of-way over, across, and through real estate owned by Lysle T. Veach, Jr., Whitney Sloane Veach, Sydney Morgan Veach, and Bailey A. Veach ("Respondents"). After hearing the evidence below, the circuit court found that Petitioners had neither an express easement nor a prescriptive easement across Respondents' property.

Having fully reviewed this matter, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this matter were fully developed during a two-day bench trial and are as follows:

In 2013, Petitioners purchased an approximate 204-acre tract of land in Grant County, West Virginia, near Knobley Road. This tract does not directly abut any public road. Respondents own property to the east of Petitioners' property, which sits between Petitioners' property and Knobley Road. Respondents' property has an internal private road stretching from Knobley Road to Petitioners' property.

1

At the time of the trial, Petitioners had access to their property in two ways. First, following construction of Appalachian Development Corridor H through their property, the West Virginia Division of Highways provided access to Petitioners' property from the newly-constructed four-lane highway. This access was referred to as a "pig path," because once the public access point became a private road where it left the controlled access right of way owned by the West Virginia Division of Highways, the private road extending to Petitioners' property was in deplorable condition. This access enters Petitioners' property on its western side.

Petitioners' other access point was through the use of the existing private road which crosses Respondents' property to Knobley Road. This is the most direct access to Petitioners' property. For many years, Respondents' predecessors in title allowed Petitioners' predecessors in title to enter Respondents' property from Knobley Road, crossing Respondents' property along the private road to access what is now Petitioners' property. Petitioners argued that their predecessors had the right to use this private road and that such use was not permissive. Respondents argued the use was permissive and was demonstrated by: 1) Respondents or their predecessors providing keys to gates along the route that were in place for extended periods of time; 2) Respondents providing a remote-control device which opened an electronic gate on the private road; and, 3) Petitioners seeking – and receiving – Respondents' permission to allow contractors to use the road during construction of a home on Petitioners' property.

In 1939, a chancery proceeding was filed that affected what is now Petitioners' property. The purpose of the proceeding was to divide and sell portions of a larger 380-acre parcel of which Petitioners' property is a part. Land Commissioners were appointed and they reported to the circuit court that the 380-acre parcel should be divided into two tracts of 230 acres and 150 acres. They further recommended that a right of way "for the benefit of either of said tracts when they are laid off," be established within the 380 acres. This proceeding affected no interest in Respondents' property.

Through various mesne conveyances, Petitioners are the successors in title to a portion of the property that was subject to the 1939 chancery proceeding. Respondents are the owners of the adjacent property to the east and are not successors in title to any person or property that was subject to the 1939 chancery proceedings. During the trial, both Petitioners and Respondents offered expert testimony from lawyers who had examined the title to both properties and opined as to the existence of an express easement allowing Petitioners to use Respondents' road. Both experts agreed[1] and the circuit court specifically found that "[n]o evidence of any Grant or Reservation of an express easement in a Deed within the [Respondents'] chain of title was introduced." In fact, the only

---

[1] Petitioners' expert nonetheless maintained that it was necessary to search for information outside the chain of title to determine if an express easement existed. This flies in the face of our law which provides, "[i]t is well settled, of course, that parol evidence is inadmissible to vary, contradict, add to or explain the terms of a valid unambiguous written instrument." *Wellman v. Tomblin*, 140 W. Va. 342, 348, 84 S.E.2d 617, 621 (1954).

3

mention in the chain of title of an easement to Petitioners' property from Knobley Road is in deeds solely in Petitioners' chain of title and which are not found in Respondents' chain of title.

Petitioners did not demonstrate below that any instrument of record in the Office of the Clerk of the County Commission of Grant County contained an easement for their use across Respondents' property. Instead, the first mention of an easement in an instrument of record was in a 1989 out-conveyance of the real estate now owned by Petitioners which purported to grant the right to use Respondents' private road. The second mention of this easement was Petitioners' source deed in 2013. This deed purports to further delineate a right in Petitioners to use Respondents' private road. No one in Respondents' chain of title is a party to either of these instruments.

Petitioners' predecessors in title co-existed as neighbors with Respondents' predecessors in title for seventy years, engaging in business dealings, visiting one another and interacting as friends. In fact, Petitioners' predecessors did not believe they were trespassing when they used the private road. This use continued unencumbered until Respondents revoked permission to use the road and began locking gates, which effectively blocked Petitioners' access across the private road. Petitioners then sought and were granted a temporary injunction prohibiting Respondents from depriving them of access until the issue of whether an easement existed across Respondents' property was resolved.

4

Following the bench trial, the circuit court determined that Petitioners had neither an express easement nor a prescriptive easement across Respondents' property, dissolved the temporary injunction, and granted a motion to alter or amend the judgment giving Petitioners the right to use the private road for the duration of their lives.[2]

Petitioners then appealed the circuit court's rulings.

## II.  STANDARD OF REVIEW

The two issues raised in this appeal involve the denial of a motion for a new trial following the circuit court's verdict in a bench trial and the subsequent denial of a renewed motion for a new trial.

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syllabus Point 1, *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996).  Likewise,

> [I]t is well-established that "'[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.'

---

[2] On the cover page of Petitioners' brief, it notes that Petitioner Leonard D. Carr died on March 8, 2019.  No suggestion of death was filed in the record and no party has been substituted for Mr. Carr.  *See W. Va. R. Civ. P.*, Rule 25.

5

Syllabus [P]oint 4, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976)." Syllabus Point 3, *Carpenter v. Luke,* 225 W.Va. 35, 689 S.E.2d 247 (2009). In other words, our standard of review for a trial court's decision regarding a motion for a new trial is abuse of discretion. *Marsch v. American Elec. Power Co.,* 207 W.Va. 174, 180, 530 S.E.2d 173, 179 (1999).

*MacDonald v. City Hosp., Inc.*, 227 W. Va. 707, 715, 715 S.E.2d 405, 413 (2011). We are further guided by the deference an appellate court affords a trial judge's factual findings following a bench trial:

Following a bench trial, the circuit court's findings, based on oral or documentary evidence, shall not be overturned unless clearly erroneous, and due regard shall be given to the opportunity of the circuit judge to evaluate the credibility of the witnesses. *W. Va. R. Civ. P[.]* 52(a). Under this standard, if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse it, even though convinced that had we been sitting as the trier of fact, we would have weighed the evidence differently. We will disturb only those factual findings that strike us wrong with the "force of a five-week-old, unrefrigerated dead fish." *United States v. Markling*, 7 F.3d 1309, 1319 (7th Cir. 1993), cert. denied, 514 U.S. 1010, 115 S.Ct. 1327, 131 L.Ed.2d 206 (1995).

*Brown v. Gobble*, 196 W.Va. 559, 563, 474 S.E.2d 489, 493 (1996).

Thus, we review the circuit court's decisions under an abuse of discretion standard. The assignments of error presented in this case will now be considered.

6

### III. ANALYSIS

This case requires us to examine long-established rules governing easements. Generally, "[a]n easement is a right that one person has to use the land of another person, for a specific purpose." *Cobb v. Daugherty,* 225 W.Va. 435, 441, 693 S.E.2d 800, 806 (2010). "The general rule … is that an easement can be created in three ways: by prescription—the easement equivalent of adverse possession; by an express grant or reservation; or … by implication from the particular set of facts and circumstances." *Id.* (quotations and footnotes omitted). The two questions arising in this matter are: 1) whether an express easement exists; and, 2) whether there is a prescriptive easement across Respondents' land for the benefit of Petitioners.[3] We will examine each of these issues in turn.

---

[3] We note that Petitioners assert as an assignment of error that the circuit court lacked the authority to grant them the right to use Respondents' road for their natural lifetimes.

> As we stated in *State, Dept. of Health v. Robert Morris N.,* 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995), "'[a] skeletal "argument," really nothing more than an assertion, does not preserve a claim.... Judges are not like pigs, hunting for truffles buried in briefs.'" (*quoting United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)). Furthermore, this Court has adhered to the rule that "[a]lthough we liberally construe briefs in determining issues presented for review, issues ... mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock,* 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996).

(continued . . .)

1.      Express Easement

The circuit court found, and our review of the record confirms, that no express easement exists that grants Petitioners the right to use the private road crossing Respondents' property.  The record further shows that a purported easement is contained in two instruments in Petitioners' chain of title – one a deed from 2013 that is the source of Petitioners' title to their land and the other a prior deed from 1989.  Both instruments purport to convey a right to use a road from Knobley Road to Petitioners' property.  As noted above, Petitioners do not own property abutting Knobley Road and Respondents' property is located between that road and Petitioners' property.  Thus, the road noted in Petitioners' chain documents necessarily must be on Respondents' property.  The problem is, no one in Respondents' chain of title is a party to either of these two instruments.  Both of these instruments are wholly within Petitioners' chain of title and are attempts by the grantors in each to convey to someone a right that they did not possess.

West Virginia Code § 36-1-10 (1923) provides, in pertinent part, "[a] deed which purports to convey a greater right or interest in real property than the person making it may lawfully convey shall operate as an alienation of such right or interest in such real

_State v. Kaufman_, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011).  Because Petitioners do not cite to any authority and fail to carry this assignment of error over into the argument section of their brief, we decline to address this issue.

We also find it telling that even though Petitioners attempted to appeal the circuit court's grant of the lifetime use of Respondents' road, Respondents did not.  Thus, Respondents have either implicitly agreed to the circuit court's finding or have waived the right to challenge it.

8

property as such person might lawfully convey." In other words, a person cannot convey a greater interest in land than that person owns. This maxim is a bedrock of real property law because "a grantee acquires nothing more than the grantor owns and can convey, particularly where the title of grantor appears in deeds of record, and grantor's intentions are expressed in his deed." *Wellman v. Tomblin*, 140 W. Va. 342, 344, 84 S.E.2d 617, 619 (1954). Here, language purporting to establish an easement is contained in both the 2013 and 1989 deeds. However, this language attempts to convey an interest binding Respondents' land that, in each case, the granting party did not have the lawful ability to grant.

Further, the prior 1939 chancery proceeding only pertained to Petitioners' property. That matter was a partition of a larger tract into two smaller tracts – neither of which encompass any of the property now owned by Respondents. The references to an easement in that matter pertain only to access between the two subdivided parcels and do not provide any right to use any private road crossing Respondents' property. Thus, the 1939 proceeding is not helpful to Petitioners' argument that there is an express easement across Respondents' property.

We conclude that the circuit court did not abuse its discretion in finding that "[t]here was no proof offered that the lawful owners of the real estate now owned by [Respondents] [g]ranted an express easement to any of the owners in the chain of title of the [Petitioners]."

9

2.      Prescriptive Easement

We now turn to the question of whether an easement across Respondents' land was established by prescription. We have recently clarified the elements necessary to establish a prescriptive easement, finding:

> A person claiming a prescriptive easement must prove each of the following elements: (1) the adverse use of another's land; (2) that the adverse use was continuous and uninterrupted for at least ten years; (3) that the adverse use was actually known to the owner of the land, or so open, notorious and visible that a reasonable owner of the land would have noticed the use; and (4) the reasonably identified starting point, ending point, line, and width of the land that was adversely used, and the manner or purpose for which the land was adversely used.

Syllabus Point 1, *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010). "A person claiming a prescriptive easement must establish each element of prescriptive use as a necessary and independent fact by clear and convincing evidence, and the failure to establish any one element is fatal to the claim." Syllabus Point 3, *O'Dell*. Finally, in order to prevail, Petitioners have a heavy burden, namely, "all of the elements of prescriptive use, including the fact that the use relied upon is adverse, must appear by clear and convincing proof." Syllabus Point 2, in part, *Beckley Nat. Exchange Bank v. Lilly,* 116 W.Va. 608, 182 S.E. 767 (1935).

*O'Dell* clarified over one hundred years of this Court's precedents on prescriptive easements and in so doing, provided clear guidance in a series of Syllabus Points as to what the term "adverse use" means and what evidence is required to establish it:

In the context of prescriptive easements, the term "adverse use" does not imply that the person claiming a prescriptive easement has animosity, personal hostility, or ill will toward the landowner; the uncommunicated mental state of the person is irrelevant. Instead, adverse use is measured by the observable actions and statements of the person claiming a prescriptive easement and the owner of the land.

In the context of prescriptive easements, an "adverse use" of land is a wrongful use, made without the express or implied permission of the owner of the land. An "adverse use" is one that creates a cause of action by the owner against the person claiming the prescriptive easement; no prescriptive easement may be created unless the person claiming the easement proves that the owner could have prevented the wrongful use by resorting to the law.

In the context of prescriptive easements, a use of another's land that began as permissive will not become adverse unless the license (created by the granting of permission) is repudiated.

The burden of proving adverse use is upon the party who is claiming a prescriptive easement against the interests of the true owner of the land. . . .

Syllabus Points 4 - 6 and Syllabus Point 7, in part, *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010).

Applying *O'Dell* to the facts of this case, we see that the circuit court did not abuse its discretion when it found that Petitioners had not satisfied the first element of a prescriptive easement: adverse use. The circuit court found on the evidence adduced during the bench trial that Petitioners' predecessors' use of the road was permissive. We agree. First, "[p]ermission may be inferred from the neighborly relation of the parties, or from other circumstances." *O'Dell*, 226 W. Va. at 613, 703 S.E.2d at 584. Here,

11

Respondents and Petitioners' predecessors maintained neighborly relations. They lent and borrowed the proverbial cup of sugar, a strong indication of permissive, rather than adverse, use.

Second, and fundamentally, Respondents gave Petitioners keys and remote controls so that Petitioners could open gates that otherwise barred access to the road across Respondents' property. We cannot imagine a more obvious manifestation of permission. We note that Respondents also specifically allowed contractors constructing a home on Petitioners' property to use the road as a means of access.[4] Petitioners had the burden to demonstrate that their use of Respondents' road was adverse and they did not make that showing.[5] Therefore, the circuit court did not abuse its discretion in reaching the conclusion that no prescriptive easement existed across Respondents' property.

---

[4] Petitioners argue that their predecessors used the road believing it to be their legal right and that Respondents knew of that belief but did not contest it. *See* Syllabus Point 2, *Faulkner v. Thorn*, 122 W. Va. 323, 9 S.E.2d 140 (1940) (permissive use continues until "licensee, to the knowledge of the licensor, renounces the permission and claims the use as his own right, and thereafter uses the way under his adverse claim openly, continuously, and uninterruptedly, for the prescriptive period"). Having reviewed the record, we do not see that clear and convincing evidence supports that position.

[5] Because Petitioners failed to establish that their use of the private road across Respondents' property was adverse, we do not address the remaining *O'Dell* factors. *See* Syllabus Point 3, *O'Dell* ("failure to establish any one element is fatal to the claim" for a prescriptive easement).

## IV.  CONCLUSION

For the foregoing reasons, we affirm the circuit court.

Affirmed.