# CHARLESTON

Pocahontas Tanning Co. *v.* St. Lawrence Boom & Mfg. Co..

Submitted January 15, 1908.     Decided March 3, 1908.

1.  Vendor and Purchaser—*Bona Fide Purchaser—Notice—Facts—Putting on Inquiry*.

    Whatever is sufficient to direct the attention of a purchaser to prior rights and equities of third parties, so as to put him on inquiry into ascertaining their nature, will operate as notice. (pp. 693, 695.)

2.  Same.

    A party is not entitled to protection as a *bona fide* purchaser, without notice, unless he looks to every part of the title he is purchasing, neglecting no source of information respecting it which common prudence suggests. (pp. 693, 695.)

3. Same

  That which fairly puts a party on inquiry is regarded as sufficient notice, if the means of knowledge are at hand; and a purchaser, having sufficient knowledge to put him on inquiry, or being informed of circumstances which ought to lead to such inquiry, is deemed to be sufficiently notified to deprive him of the character of an innocent purchaser. (pp. 693, 695.)

4. Same.

  If one has knowledge or information of facts sufficient to put a prudent man on inquiry, as to the existence of some right or title in conflict with that which he is about to purchase, he is bound to prosecute the same, and to ascertain the extent of such prior right; and, if he wholly neglects to make inquiry, or, having begun it, fails to prosecute it in reasonable manner, the law will charge him with knowledge. of all facts that such inquiry would have afforded. (pp. 693, 695.)

5. Same.

  One who has taken deed for land, purporting on its face to convey all interests therein, but with reservation of pine and hemlock timber, and recital that such timber on the land has been sold, and afterwards acquires by deed without such reservation outstanding interest found to exist in title to the land, not conveyed by the former deed, is chargeable with notice of the rights of another, whom, by common prudence, he would have found to be owner of such timber by purchase prior to the deed containing such reservation and recital, and, as to that other, is not an innocent purchaser of interest in such timber by said deed for the outstanding interest. (pp. 690, 695.)

Appeal from Circuit Court, Pocahontas County.

Bill by the Pocahontas Tanning Company against the St. Lawrence Boom & Manufacturing Company and others. Decree for plaintiff, and defendants appeal.

*Reversed.   Remanded.*

H. L. Van Sickler and Henry Gilmer, for appellants.

Talbott & Hoover and Price, Osenton & McPeak, for appellee.

Robinson, Judge:

  A tract of 2302 acres of mountain land was conveyed by Holt and Mathews to McGraw, November 10, 1897, the deed for which was recorded February 9, 1898. The grantors covenanted to warrant generally the title, and that they had a right to convey. The deed contains this clause: "But the pine & hemlock timber which are or were on this land are

now hereby conveyed, as they were sold many years ago and were probably long since cut and removed.'' It later developed that there was an outstanding interest in this tract of land, held by the heirs of McCarty, deceased, as far as the legal title was concerned. McCarty had been a purchaser at judicial sale with Holt and Mathews, and the special commissioner's deed conveyed to all three. His heirs were a son and six children of a deceased daughter, four of them being infants. Conveyances to McGraw were obtained from the adult heirs; and, by legal proceedings to sell the interests of the infants, a deed was authorized and made to McGraw, conveying the interests of such infants. The deed from the son conveyed a full one-sixth interest in the land, without reservation, and was dated January 31, 1898. The deed from the two adults of the six grandchildren conveyed a full two-sixths of one-sixth interest in the land, without reservation, and was dated November 26, 1898. The deed of a special commissioner, appointed in the proceedings to sell, as aforesaid, the interest of said infants, conveyed four-sixths of one-sixth interest in the land, was dated May 14, 1898, and contains this reservation: "The pine and hemlock timber is not conveyed, as it was sold and conveyed by J. W. D. McCarty in his lifetime." The three deeds aforesaid, for the outstanding interest of McCarty, were recorded on the same day, January 27, 1899. By deed April 1, 1903, in which, for some reason that does not appear, the Greenbrier Lumber Company joined, McGraw conveyed the said tract of 2302 acres to the Pocahontas Tanning Company, plaintiff herein, with covenants of general warranty and right to convey, and without reservation.

The object of this suit is best explained by a quotation from plaintiff's bill, wherein it is alleged that the plaintiff ''is the owner of a tract of land situated * * * * on the waters of Knapp's Creek containg 2302 acres known as the Henry Harper Land, subject to certain interests in the hemlock and white pine timber on said tract claimed by the above named defendants as hereinafter set forth, but that it is the undisputed owner of an undivided eight thirty-sixths interest in said hemlock and white pine timber; the defendants Ethel Curry, Bertie Curry, Elmer Curry and Georgia Curry are the owners of one thirty-sixth interest in said timber each; the St. Lawrence Boom & Manu-

facturing Company claims  to own  twenty-four thirty-sixths.
undivided interest in said hemlock and white pine timber and
it is to adjudicate these property rights and make partition of
the said real estate held in said timber,  and  to restrain the
waste now being committed  by  the defendant the St. Law-
rence Boom & Manufacturing Company that this suit is
brought." The said eight thirty-sixths interest is that which
it is claimed McGraw secured by the fact that there were no
reservations of the pine and hemlock in the deeds to him, as
aforesaid, from the adult heirs of McCarty. The four Curry
children, we take it, are alleged to be owners  as  aforesaid,
because of the reservation in the deed to McGraw conveying
the interests of said infants, as we have noted. The bill,
alleging · title in the hemlock and white pine timber in plain-
tiff, as aforesaid, exhibits as part thereof all the deeds men-
tioned by us hereinbefore. Plaintiff also alleges that on
November 12, 1888, the said Holt and Mathews, two of the
three owners as aforesaid, conveyed their interest in the
white pine and hemlock timber on said land to the Cumber-
land Lumber Company, with right to remove the same within
twenty years from June 13, 1888, exhibiting an attested copy
of the deed, recorded July 21, 1891, and that, by · *mesne* con-
veyances, such interest therein became vested in the St. Law-
rence Boom & Manufacturing Company. But a reference to
the said exhibited deed shows us that Holt and Mathews pur-
ported  to convey the whole of such timber by the following
description: "All the white pine & hemlock timber on a cer-
tain tract on Knapps Creek in Pocahontas County, known as
the Harper Land calling for about two thousand three hund-
red acres and bought by  said  Holt & Mathews at Judicial
sale." Thus it appears that Holt and Mathews, in this deed,
were ignoring any interest of McCarty, not even recognizing
him as a joint purchaser with them at judicial  sale,  as  the
deed exhibited with the bill, made in pursuance of such judi-
cial sale, conveying to all three,  dated  July 31, 1889, after
said sale of the timber  by  Holt and Mathews, shows him to
have been, not  only by its recitals but by its conveyance to
him  as  joint purchaser. Yet this is explained by facts dis-
closed in the answers. Quite significant it is that the deed of
Holt and  Mathews to McGraw also ignored the interest of Mc-
Carty; and that the deed to McGraw referred, as we have seen,

to such sale of this timber. By it, when he purchased the land, defectively as to including all interest it is true, he was told that this timber had been sold many years before, and that the same had probably long since been cut and removed. We may as well here note that this deed to McGraw, at the least, distinctly stated that the pine and hemlock timber "on this land" had been "sold many years ago." Reference to the records by McGraw would have disclosed said deed purporting to convey all interests in the timber to the Cumberland Lumber Company, and thereby shown him that purchaser of whom he could have made inquiry as to what interests it actually acquired. And this inquiry would have led McGraw to the facts now relied on, as we shall see, in the answer of the St. Lawrence Company—that it was the legal owner of the interests of Holt and Mathews and had acquired through them equitable title to the interest of McCarty.

We have observed that, by this suit, plaintiff claims title to eight thirty-sixths of said pine and hemlock timber, calls for partition thereof, and prays that waste by its alleged cotenant be enjoined. Injunction was awarded plaintiff, restraining and enjoining the St. Lawrence Company and its employes from cutting down and destroying the hemlock timber and other trees, and from committing waste generally upon said tract of 2302₀ acres. In vacation, upon notice of motion to dissolve, the cause was heard upon such motion made, demurrer interposed to plaintiff's bill, answers and exceptions thereto endorsed, depositions taken by plaintiff, and motions, after due notice, in relation to additional injunction bond as well as bond to be given by defendant to perform and satisfy any decree. So much of the decree then entered, and now complained of, as is material in the present consideration of the cause, is: "That the defendant the St. Lawrence Boom & Mfg. Co., and G. W. Huntley & Son, be restrained and enjoined from cutting any more standing timber;" and "the Court doth overrule the defendants demurrer and doth overrule the defendants · motion to dissolve said injunction heretofore awarded without condition."

We need but briefly refer to the answers aforesaid. It suffices to say that there is absolute denial of title in plaintiff to any of the said pine and hemlock timber; and these answers affirm that the St. Lawrence Company owns all of

44

said timber on the tract and has the right until June 13, 1908, to cut and remove the same. Consistent with these allegations, the committing of waste is denied. It is shown that the interest of McCarty was acquired by those under whom defendant claims title to said timber, at the time of the purchase from Holt and Mathews by the Cumberland Lumber Company; and it is alleged that plaintiff had notice of the rights of the defendant to the pine and hemlock timber when it purchased from McGraw, and that the record of McGraw's title shows that he had purchased said land subject to the sale of the pine and hemlock timber made to the Cumberland Lumber Company. There were no replications to these answers. The exceptions to them pertained to the fact that they did not show recordation of title papers for the McCarty interest in the pine and hemlock, on behalf of defendant's claim thereto; but it may be well conceded that the defendant can claim only equitable title thereto. These answers further aver that Mathews acquired the aforesaid deeds in the name of McGraw for the outstanding McCarty interests, in perfecting the title to the land sold him by Holt and Mathews aforesaid, ancillary to the deed made by them to McGraw as part of the same transaction, and that, by these deeds for the McCarty interests in the land, McGraw could not acquire any rights as against defendant by reason of the omission of reservation of said timber; for, by the original deed to him, he had knowledge of the fact, or was put upon inquiry which pointed to the fact, that this timber on the land was sold to those from whom defendant acquired it.

There is a single question for our consideration, as we view it. Was McGraw a purchaser of the interests in the pine and hemlock timber now claimed by plaintiff, without notice of the rights of those under whom defendant claims? The case turns solely on this question of notice. The depositions filed by plaintiff relate to the existence of the alleged waste, and do not pertain to notice. All matters other than those pertaining to the above question are not now controlling, and shall be eliminated. Plaintiff's title must come from McGraw, if any it has. If his title was not good, as against the rights of defendant, plaintiff's clearly cannot be. It is insisted that the bill is insufficient, and that the demurrer should have been sustained because the recital in the

original deed to McGraw that this timber had been sold shows
that he could have acquired no title to the same, as against
defendant, by the subsequent deeds to him. But the bill
alleges title in McGraw, and shows title papers therefor,
which title papers avail him for such interest in the timber as
is claimed, unless it is shown that the pursuit of inquiry upon
which the aforesaid recital put McGraw would have led him
to the facts of ownership in another of the interests claimed.
The bill does not show that another had become owner there-
of, or, in other words, that the recital was true as to the
McCarty interest. Hence, the demurrer was properly
overruled. But the answers do show this ownership in
defendant. Title in McGraw, or plaintiff through him, as
against defendant, is flatly denied by the answers; and facts
are averred therein, showing that, if McGraw had inquired,
as we shall see he was bound to do, as to the meaning of the
aforesaid recital in his original deed, he would have discov-
ered that the Cumberland Lumber Company, or those claim-
ing under it, owned the McCarty interest, had paid therefor,
and that McCarty had signed written evidence of the full
receipt of the purchase money therefor, paid him by
Mathews. Facts there averred show that, had he so inquired,
he would have found what his deed for the interests of the
infant heirs, recorded by him on the same day with those by
which it is now claimed he took title to the interest in the
timber in controversy, told him—that McCarty, in his life-
time, had sold his interest in the pine and hemlock. There
being no replications to the answers, these facts therein
shown in defense against the allegations of plaintiff's bill
must be taken as true, as far as present consideration of the
cause is concerned. *Wilt* v. *Huffman*, 46 W. Va. 473;
*Bierne* v. *Ray*, 37 W. Va. 571; *Snyder* v. *Martin*, 17 W.
Va. 276; and other cases. Reply and proof may make a very
different case.

It is argued for plaintiff that the clause in the original
deed to McGraw, quoted in the beginning hereof, has the
effect to convey the pine and hemlock timber. Not for a
moment can we give ear to such forced construction. It
would be wholly inconsistant with the fact, shown by plain-
tiff's bill, that Holt and Mathews, prior to this deed for the
land to McGraw, had made deed for the pine and hemlock to

the Cumberland Lumber Company, purporting to convey all interests in said timber, giving a right for twenty years to remove the same, which right had not expired. Knowing this, as reasonable and intelligent men, they, of course, would make a reservation of what they had sold, as they clearly did. This fact, of itself, is enough to cause us to read "now" as "not." In sense, we must believe the word "now" to be a mere clerical error, and intended for "not." The very context shows this conclusively. It speaks of "the pine and hemlock which are or were on this land." Note the word "were." Shall we say that it is consistent with the words "now conveyed?" Would grantors undertake to convey that which was not on the land—pine and hemlock which "were" once there? But this is not all. The residue of the clause is not consistent with the idea of "now conveyed." It says, "as they were sold many years ago and were probably long since cut and removed." Would sensible men undertake to convey that which had long since been cut and removed from the land? McGraw, by this clause in his original deed for the land must be charged with notice of what it would mean to any reasonable man. It was notice that the pine and hemlock were not conveyed to him, that they were sold many years before his said deed. And if such forced construction, as is suggested, were accepted, it could not effect the question of this notice. The recital that the timber had been sold would still remain, and cannot be excluded.

But it is contended that McGraw obtained good title to the eight thirty-sixths interest in this timber by the two deeds from the adult McCarty heirs to him, in which there were no reservations. These deeds being acquired subsequent to his knowledge of said clause in the former deed to him, could he so acquire such title as against such equitable owner as defendant is shown to be? True, a reference to the records showed him no conveyance of the McCarty interest. But his own deed from Holt and Mathews was notice to him that the pine and hemlock were long ago sold. Holt and Mathews would not convey it to him for that reason. That deed told him that not simply the interest of Holt and Mathews were sold, but that the pine and hemlock timber "on this land" were sold. The words "on this land" would include the McCarty interests. What was the effect of such notice?

Did it not put McGraw on inquiry and charge him with notice of all which such inquiry would have disclosed; that is, that the same party that secured the Holt and Mathews title to this timber by legal deed also secured the McCarty title by equitable standing? Would it not have led him to the facts set forth in the answers herein, showing good equitable title in those under whom defendant holds? We must hold, as the case is now presented, that, with such notice, or opportunity to obtain the facts, McGraw could not, and did not, take title to this timber as against defendant. He is bound by the said recital in the former deed to him, and could not acquire, as against those under whom defendant claims, that which he was told had been sold, and which he would have found sold to those who conveyed to defendant had he investigated all that to which the recital led him. Had he so investigated, he would have found facts not only consistent with the recital that the pine and hemlock had been sold, but consistent with the purport of the deed of Holt and Mathews to the Cumberland Lumber Company to convey all interest in this timber to it, as we have noted, of which deed and its said purport he had notice by its recordation.

Plainly, as to the last deed to McGraw, aforesaid, in securing the McCarty interest in the land, he could not have taken good title to the pine and hemlock as against defendant; for, long before its date, he had received deed for the intersts of the infant heirs, as we have seen, in which it was expressly stated that McCarty, in his lifetime, had "sold and conveyed" the pine and hemlock. This was direct in its terms, related to the identical land, and was the most emphatic notice. When the first deed was made to McGraw in getting in the outstanding McCarty interest, it is true that he had only the recital of the deed of Holt and Mathews to him, saying that the pine and hemlock were not conveyed therein, as they had long before been sold, not telling to whom, yet amply sufficient to put him on inquiry as to the true facts, which are now disclosed by the answers herein, without replication standing as true in relation to adverse ownership of the pine and hemlock at the time it is alleged McGraw obtained title thereto. He was a purchaser, though for valuable consideration, yet with notice of another's equity.

The law, widely recognized, and controlling herein, is most

concisely stated by an eminent authority, Warvelle on Vendors, section 263, as follows: "Whatever fairly puts a party on inquiry is regarded as sufficient notice where the means of knowledge are at hand; and a purchaser, whenever he has sufficient knowledge to put him on inquiry, or where he has been informed of circumstances which ought to have led to such inquiry, is deemed to have been sufficiently notified to deprive him of the character of an innocent purchaser. It is the duty of every person who may have knowledge or information of facts sufficient to put a prudent man on inquiry, as to the existence of some right or title in conflict with that he is about to purchase, to prosecute the same, and to ascertain the extent of such prior right; and if he wholly neglects to make inquiry, or, having begun it, fails to prosecute it in a reasonable manner, the law will charge him with knowledge of all facts that such inquiry would have afforded. A purchaser is bound to take notice of all recitals in the deed through which the title is derived, and is affected with notice of every matter or thing stated in the several conveyances constituting his chain of title. All such statements and recitals are sufficient to raise an inquiry, and the corresponding duty is thrust upon the purchaser to investigate and fully explore everything to which his attention is thereby directed." This authority also tells us: "Notice, to bind a purchaser, need not consist of positive information, for any fact that would put an ordinarily prudent man on inquiry will suffice; nor is it essential that notice of an equitable interest should come from the interested party or his agent, for such notice may be imparted *aliunde*, provided it is of a character likely to gain credit. Vague rumor or mere surmises are insufficient in themselves, but where parties assume to speak from knowledge, and particularly when such parties stand in situations which may reasonably be presumed to afford them the means of knowledge, the purchaser cannot disregard the information so obtained." Further, it says: "It has been held, however, that where a party has heard of a sale of land before he purchased, and from a source entitled to reasonable credit, and under circumstances not likely to be forgotten, a duty would devolve upon him of tracing out the matter and ascertaining its truth." These principles are so universally accepted that it seems useless to cite any of the many decisions

approving them. This court applying the same doctrine, in
*Cain* v. *Cox*, 23 W. Va. 594, held: "One is considered a pur-
chaser for valuable consideration with notice of another's
equity, whenever he has such notice of such facts as would put
him on inquiry; for the law imputes to a person knowledge of
facts, of which exercise of common prudence and ordinary
diligence must have apprised him." Some of the other
decisions of this Court recognizing the doctrine, are: *Clark*
v. *Lambert*, 55 W. Va. 512; *Fouse* v. *Gilfillan*, 45 W. Va.
213; and *Crumlish* v. *Shenandoah Valley R. Co.*, 32 W. Va.
244. In applying the doctrines in *Burwell's Admr's.* v. *Fau-
ber*, 21 Grat. 446, it is said: "Purchasers are bound to use
a due degree of caution in making their purchases, or they
will not be entitled to protection. *Caveat emptor* is one of
the best settled maxims of the law, and applies exclusively to
a purchaser. He must take care and make due inquiries, or
he may not be a *bona fide* purchaser. He is bound not only
by *actual*, but also by *constructive* notice, which is the same
in its effect as actual notice. He must look to the title papers
under which he buys, and is charged with notice of all the
facts appearing on their face, or to the knowledge of which
anything there appearing will conduct him. He has no right
to shut his eyes or his ears to the inlet of information, and
then say he is a *bona fide* purchaser without notice." This
language of the Virginia court is quoted approvingly by
Chief Justice Fuller, in *Simmons Creek Coal Co.* v. *Doran*,
142 U. S. 473.

Since it is apparent that McGraw must be considered a pur-
chaser with notice of the equitable rights of those under
whom the St. Lawrence Company holds, and since plaintiff
could acquire no title as against the St. Lawrence Company
that McGraw did not legally acquire as against it, it is read-
ily to be observed that the refusal to dissolve the injunction
awarded against defendant showing superior equitable rights
to any of plaintiff, and decreeing continuance of such injunc-
tion, is clearly erroneous. In these particulars, the decree
is, therefore, reversed, the injunction dissolved, and the
cause remanded to be further proceeded in according to the
principles herein announced and rules governing courts of
equity.

*Reversed. Remanded.*