**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-2553

TRANS ENERGY, INC., a Nevada Corporation; REPUBLIC PARTNERS
VI, LP, a Texas limited partnership; REPUBLIC ENERGY
VENTURES, LLC, a Delaware Limited Liability Company; PRIMA
OIL COMPANY, INC., a Delaware Corporation,

Plaintiffs - Appellees,

v.

EQT PRODUCTION COMPANY, a Pennsylvania Corporation,

Defendant - Appellant.

Appeal from the United States District Court for the Northern
District of West Virginia, at Clarksburg.  Frederick P. Stamp,
Jr., Senior District Judge.  (1:11-cv-00075-FPS-JES)

Argued: December 12, 2013        Decided: February 25, 2014

Before WILKINSON and GREGORY, Circuit Judges, and John A.
GIBNEY, Jr., United States District Judge for the Eastern
District of Virginia, sitting by designation.

Affirmed in part and vacated in part by published opinion.
Judge Gregory wrote the opinion, in which Judge Wilkinson and
Judge Gibney joined.

**ARGUED:** W. Henry Lawrence, IV, STEPTOE & JOHNSON, PLLC,
Bridgeport, West Virginia, for Appellant.  James C. Ho, GIBSON,
DUNN & CRUTCHER, LLP, Dallas, Texas; Stuart A. McMillan, BOWLES
RICE LLP, Charleston, West Virginia, for Appellees.  **ON BRIEF:**
Amy Marie Smith, Bridgeport, West Virginia, John Joseph Meadows,

STEPTOE & JOHNSON, PLLC, Charleston, West Virginia, for Appellant. James E. Scott, BOWLES RICE LLP, Charleston, West Virginia; Ashley E. Johnson, GIBSON, DUNN & CRUTCHER LLP, Dallas, Texas, for Appellees.

_____

GREGORY, Circuit Judge:

This appeal arises from an action to quiet title. The parties make competing claims of ownership to the gas rights underlying a 3,800 acre plot of land located in northern West Virginia known as Blackshere. The parties filed cross-motions for summary judgment, and the district court ruled in favor of the plaintiffs. The defendant, EQT Production Company ("EPC"), appealed the district court's decision on the merits, as well as several of its procedural rulings. EPC also makes a new argument on appeal, challenging whether subject matter jurisdiction existed in the district court.

Finding no error in any of the district court's decisions, we affirm the judgment as to three of the four plaintiffs. However, in order to retain jurisdiction, we exercise our authority to dismiss plaintiff Republic Energy Ventures, LLC ("REV") from the case, and we vacate the judgment with respect to that party.

I.

In 1892, John Blackshere and South Penn Oil Company ("South Penn"), which would later become Pennzoil Products Company ("Pennzoil"), entered into an oil and gas lease covering the Blackshere property (the "Blackshere Lease" or "Lease"). The transfer was recorded with the Wetzel County Clerk. In 1901 and

3

1902, South Penn entered into two indenture agreements with Carnegie Natural Gas Company and Hope Natural Gas Company ("Hope"). The indentures purported to sever South Penn's gas rights from its oil rights and allocate the gas rights to Carnegie and Hope.[1] It is undisputed that these indentures were never recorded.

In 1965, Hope conveyed all of its interests and rights to any property in Wetzel County to Consolidated Gas Supply Corporation ("Consolidated Gas"). The transfer, which was recorded, did not reference the Blackshere Lease. Consolidated Gas is a predecessor in title to EPC.[2] As a result, the parties agree that EPC's alleged interest in Blackshere's gas rights derives from any right in the property that Hope transferred to Consolidated Gas by way of this 1965 conveyance.

On October 15, 1996, Pennzoil assigned its rights in the Blackshere Lease to Cobham Gas Industries, Inc. ("Cobham") through an assignment and bill of sale (the "Assignment"). The Assignment was recorded through a memorandum of assignment (the "Memorandum") filed with the Wetzel County Clerk.

---

[1] Under the agreements, Hope received the rights to the vast majority of the property, some 3,550 acres.

[2] Consolidated Gas, after a series of name changes, conveyed its interests to Eastern States Oil and Gas, Inc. in 1995. Eastern States eventually became EPC.

4

On November 5, 2004, Cobham conveyed its interest in the property (the "2004 Assignment") to plaintiff Prima Oil Company, Inc. ("Prima") by way of a recorded transfer (the "2004 Confirmatory Assignment"). Prima is a wholly-owned subsidiary of plaintiff Trans Energy, Inc. ("Trans Energy"). After the 2004 Assignment, Trans Energy assigned half of its portion of the leasehold interest to plaintiff Republic Partners VI, LP ("Republic Partners"). REV's interest in the matter derives from an overriding royalty interest in whatever production Republic Partners obtains from the lease.

In 2011, Trans Energy was granted a permit by the West Virginia Department of Environmental Protection to drill a new gas well on the property. Prior to drilling the new well, Prima discovered EPC's alleged interest in the Lease resulting from the unrecorded Hope indenture. The plaintiffs then filed this action, seeking to quiet title to the Blackshere Lease and requesting declarations that they have rightful title to the gas rights underlying the property, and that Prima was a bona fide purchaser for value ("BFP") with no actual or constructive knowledge of a competing interest in the property when it acquired Cobham's interest in 2004.

EPC answered and filed several counterclaims seeking a declaration that it held superior title to Blackshere's gas

5

rights, as well as tort claims for trespass, conversion, and waste.[3]

After significant discovery was undertaken by both sides, EPC filed a motion for an extension of time to complete discovery and to defer consideration of the plaintiffs' anticipated motion for summary judgment. The parties then filed cross-motions for summary judgment. The plaintiffs also filed a motion in limine to exclude evidence of punitive damages.

On October 22, 2012, the district court informed the parties by letter of its tentative rulings. The district court stated its intention to (1) grant the plaintiffs' motion for summary judgment; (2) deny the defendant's motion for summary judgment; (3) deny the defendant's motion for an extension of time to complete discovery and to defer consideration of the plaintiffs' summary judgment motion; and (4) grant the plaintiffs' motion in limine to exclude evidence of punitive damages. The court also advised the parties not to file any further motions or pleadings with respect to the rulings contained in the letter.

---

[3] The plaintiffs then filed an amended complaint raising the same tort claims and seeking compensatory damages but later withdrew these claims.

6

The next day, EPC filed a motion for leave to file a supplemental memorandum in support of its summary judgment motion and against the plaintiffs' summary judgment motion.

On November 26, 2012, the district court entered two memorandum opinions in accordance with its tentative letter rulings. In a thorough, well-reasoned opinion, the court granted the plaintiffs' motion for summary judgment, denied the defendant's motion for summary judgment, and denied the defendant's motion for leave to supplement the record. The second opinion denied EPC's motion for an extension of time to complete discovery and to defer consideration of the summary judgment motions, and granted the plaintiffs' motion to exclude punitive damages evidence. The court then entered final judgment in favor of the plaintiffs, and this appeal followed.

## II.

### A.

Although not raised below, EPC challenges on appeal whether the district court had subject matter jurisdiction over the case. Whether subject matter jurisdiction exists is a question of law that we review de novo. In re Kirkland, 600 F.3d 310, 314 (4th Cir. 2010). The plaintiffs relied on diversity of citizenship in filing the case in federal court. See 28 U.S.C. § 1332(a)(1). The case was originally filed against EQT

7

Corporation.[4]  By mutual agreement of the parties, EQT Corporation was substituted as a defendant by EPC, a Pennsylvania company.  It is undisputed that Trans Energy is a Nevada Corporation and Prima is a Delaware Corporation.  The complaint identified Republic Partners as a citizen of Texas and REV as a citizen of Delaware, thereby establishing complete diversity.  However, the plaintiffs now acknowledge that they improperly alleged the citizenship of Republic Partners and REV by referring only to the states in which those entities are organized and do business.  See Carden v. Arkoma Assocs., 494 U.S. 185, 195 (1990) (partnerships have citizenship of their partners); Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 120 (4th Cir. 2004) (limited liability companies have citizenship of their members).

A federal statute allows for the curing of jurisdictional pleading defects on appeal.  See 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.").  In accordance with this, the plaintiffs filed a motion to supplement the record with an affidavit attesting to the Texas citizenship of each member of Republic Partners.  At oral argument, EPC conceded the accuracy

---

[4] EQT Corporation is not to be confused with EQT Production, the current defendant and to whom we refer as "EPC" throughout.

of this information.  Accordingly, we grant the plaintiffs' motion to supplement the record, and we find no jurisdictional defect with respect to Republic Partners.

As to REV, the plaintiffs now concede that it includes members who are citizens of Pennsylvania, the same as EPC.  To keep diversity of citizenship intact, the plaintiffs propose to have REV dismissed as a party under Federal Rule of Civil Procedure 21.  See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 836 (1989) (holding that the courts of appeals have the authority to dismiss a dispensable nondiverse party by virtue of Rule 21).  EPC argues, however, that REV is an indispensable party under Rule 19 and cannot be dismissed.

Under Rule 19(b), when joinder of parties is not feasible because of, among other things, nondiversity, a court must decide whether "'the action should proceed among the parties before it, or should be dismissed' because the absent party is indispensable."  Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 552 (4th Cir. 2006) (quoting Fed. R. Civ. P. 19(b)). In making this determination, a court must evaluate:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Id.

As an initial matter, we have previously admonished that "[d]ismissal of a case is a drastic remedy, . . . which should be employed only sparingly." Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 918 (4th Cir. 1999). Further, the Supreme Court has stated that, "[o]nce a diversity case has been tried in federal court, . . . considerations of finality, efficiency, and economy become overwhelming." Caterpillar, Inc. v. Lewis, 519 U.S. 61, 75 (1996). Both directives strongly caution against dismissing the case, which involved extensive discovery and was pending before the district court for over a year and a half.

As mentioned, REV's stake in the matter results from its royalty interest in whatever production Republic Partners obtains from the lease. REV is seeking to be dismissed from the case, assured that its interests will be adequately represented by the remaining plaintiffs, all of whom are related entities seeking the same result. EPC, on the other hand, argues that regardless of whether REV's interests are protected, Rule 19(b) concerns the interests of all the parties, not merely those of the party proposed to be dismissed. See F. Rule Civ. P. 19(b) (asking "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties") (emphasis added). In its answer to the complaint, EPC

10

asserted several counterclaims that included REV as a defendant. It argues that it is entitled to have REV remain as a possible defendant for its counterclaims should this Court reverse the overall merits determination of the district court.  Given our decision, explained below, to affirm the district court's ruling in favor of the plaintiffs, this argument is functionally moot. In any event, we note that the defendant has failed to show – or even suggest – a single, tangible way in which it will be harmed by REV's absence.  See Dore Energy Corp. v. Prospective Inv. & Trading Co. Ltd., 570 F.3d 219, 232 (5th Cir. 2009) ("The factors under Rule 19(b) are concerned with whether actual harm to anyone's interest will occur if the case proceeds absent certain parties.") (emphasis added).  Instead, EPC merely states generally that it has a right to have REV remain as a party without addressing why the 19(b) factors weigh in favor of a finding of indispensability.  Having reviewed the parties' arguments and the record, we are satisfied that there is no reason to believe that any party will be harmed by REV's absence, or that the plaintiffs received an improper "tactical advantage" by including REV as a party.  See Parker v. Centre Group Ltd. P'ship, 70 F.3d 1262 (4th Cir. 1995) (unpublished table decision).  Additionally, to the extent EPC is concerned about not being sued in a separate state action filed by REV, the plaintiffs have asked that REV be dismissed with prejudice.

11

Given these considerations, we deem this an appropriate case in which to exercise our power under Rule 21 to dismiss REV from the suit and preserve diversity among the remaining parties.

## B.

Turning to the merits of the case, EPC raises three main issues. First, it argues that the 1996 transfer from Pennzoil to Cobham conveyed only the oil rights to the Blackshere Lease and not the gas rights. Second, EPC contends that the district court lacked a factual basis on which to find that Prima received title to the lease by virtue of the 2004 Confirmatory Assignment. Third, EPC argues that Prima had notice of its competing claim at the time of the 2004 Assignment and was therefore not a BFP. We address each issue in turn, utilizing a de novo standard of review. Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013) ("We review a district court's grant of a motion for summary judgment de novo, applying the same legal standards as the district court.").

## 1.

The defendant first argues that the language of the Memorandum did not convey the gas rights to the Blackshere Lease. Basic principles of West Virginia property law guide our analysis on this issue. "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or

12

interpretation but will be applied and enforced according to such intent." Syl. pt. 4, Zimmerer v. Romano, 679 S.E. 2d 601 (W. Va. 2009). "In construing a deed, will, or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from doubt . . . ." Syl. pt. 1, Maddy v. Maddy, 105 S.E. 803 (W. Va. 1921).

The Memorandum states that Pennzoil, through the Assignment, "did bargain, sell, transfer, assign and convey unto [Cobham], all right, title and interest it may have in and to certain oil and gas leases and 88 wells more particularly described on EXHIBIT 'A' and EXHIBIT 'B', attached [t]hereto and made a part [t]hereof." Exhibit A is a list of leases associated with the conveyance, including the Blackshere Lease. Exhibit B lists both the leases and wells being transferred as part of the sale. Exhibit B includes a "rights" column for each of the wells, under which is indicated "oil," "gas," or "oil and gas." The rights columns for all the Blackshere Lease wells indicate "oil." EPC contends that Exhibit B lists not only the wells being transferred but also the ownership rights of each lease associated with those wells. Thus, because "oil" is the only right associated with the Blackshere Lease wells, the

13

conveyance must have been intended to transfer only the oil rights to Cobham.

We disagree with this reading, and instead adopt the district court's conclusion that the Memorandum unambiguously establishes that Pennzoil transferred both oil and gas rights to the oil and gas leases listed in Exhibit A, and that Exhibit B simply lists the wells being transferred and the rights utilized by those wells. First, the granting language of the memorandum plainly states that the leases being transferred were "oil and gas leases." (emphasis added). There is no indication that any of the leases were simply oil leases or simply gas leases. Exhibit A lists the entire Blackshere Lease, as conveyed by John Blackshere to South Penn in 1892. Nothing in the granting language of the Memorandum or the list of leases in Exhibit A indicates that the oil and gas rights were severed at any point.

Second, the Memorandum states that Pennzoil conveyed all of its interest in and to "certain oil and gas leases and 88 wells . . . ." (emphasis added). This indicates the transfer of two distinct types of Pennzoil property: leases and wells. Exhibit A, which does not include reference to any wells, is clearly a list of the leases being transferred. Exhibit B, on the other hand, offers particularized descriptions of each of the wells and is properly understood as a list of the wells being transferred and the type of production associated with each

14

well.  The fact that some wells produced only oil in no way limits the rights included in the leases.  Moreover, the defendant's position requires reading Exhibit B in isolation and ignoring the remaining language in the Memorandum and Exhibit A. When, as it must be, the instrument is "construe[d] . . . as a whole, taking and considering all the parts together," Syl. pt. 1, Maddy, 105 S.E. at 803, it is clear that Pennzoil transferred to Cobham all of its rights in a series of oil and gas leases, as listed in Exhibit A – including the unsevered 1892 Blackshere Lease – as well as its rights to the accompanying wells, as listed in Exhibit B.  We therefore affirm the district court's decision that the Memorandum unambiguously conveyed to Cobham the gas rights in the Blackshere Lease.

2.

EPC next contends that because the plaintiffs failed to offer the 2004 Confirmatory Assignment into the record the district court lacked a factual basis on which to find that Prima ever received title to the Blackshere Lease.  As noted, the 2004 Confirmatory Assignment recorded the sale of Cobham's interest in the Lease to Prima.  In the proceedings below, the plaintiffs purported to attach this document to their motion for summary judgment; however, it is now apparent that they mistakenly attached a different, unrelated instrument.  EPC avers that, without the 2004 Confirmatory Assignment, the

15

district court simply had no evidentiary basis for concluding that Prima held an unbroken, recorded chain of title to the Blackshere Lease.

This argument is easily rejected. EPC's own expert mentioned the 2004 Assignment in testifying that the plaintiffs held an unbroken chain of title going back to the original 1892 lease. The witness, Arnold Schulberg, testified:

Q. And we were talking about what the record chain of title shows regarding ownership of the Blackshere lease and we were dealing with –- I think we got up to Cobham; is that correct?

A. Yes.

Q. And what was your understanding after the Cobham?

A. We have an assignment from Cobham Gas Industries, Inc., to Prima Oil Company, Inc.

Q. And do you know the date of that?

A. It's, apparently, November 5th, 2004.

. . .

Q. Okay. Is it fair to say that based just on the record title, that there is a chain directly from the original lessor to Prima Oil?

A. Yes. There's a chain.

Q. Based on the record?

A. Yes.

The plaintiffs' expert also testified to the same effect, stating that Prima held record title to the Blackshere Lease. Additionally, the plaintiffs offered into evidence a written description of Prima's complete chain of title that specifically referenced the 2004 Assignment. Clearly then, the evidence provided an adequate basis for the district court's conclusion

16

that Cobham conveyed to Prima its interest in the Lease via the 2004 Assignment. The defendant has not directly challenged the validity of the evidence regarding the 2004 Assignment, and instead merely relies on a clerical error of the plaintiffs in attaching the wrong document to their motion. Considering the actual evidence that made it into the record, which is clear, we reject EPC's argument on this point.

3.

EPC's third and final argument is that Prima was not a BFP in 2004 because it had notice of EPC's competing claim to Blackshere's gas rights. Under West Virginia law, unrecorded written contracts, such as the 1901 and 1902 indentures that purported to sever the gas rights underlying the property, are "as effective as a recorded deed" against purchasers with notice of the unrecorded transfer. Farrar v. Young, 230 S.E.2d 261, 265 (W. Va. 1976). As a result, even if Prima can demonstrate record title to the gas rights, EPC might nevertheless have a claim as the rightful holder of those rights.

Importantly, though, the rule regarding unrecorded transfers also provides that such transfers are invalid as against BFPs. See W. Va. Code § 40-1-9. A BFP is "one who purchases for a valuable consideration, paid or parted with, without notice of any suspicious circumstances to put him on inquiry." Stickley v. Thorn, 106 S.E. 240, 242 (W. Va. 1921).

17

This rule protects good faith purchasers who conduct due diligence prior to purchasing an interest in real property. See Gullett v. Burton, 345 S.E.2d 323, 327 (W. Va. 1986). A party alleging notice to a purchaser must show that the purchaser was placed on actual or constructive notice of the competing claim or defect in title. Fanti v. Welsh, 161 S.E.2d 501, 505 (W. Va. 1968). Such knowledge is imputed to the purchaser if it could have been acquired through "the exercise of ordinary diligence." Id. "[T]he burden of proving notice to a purchaser for value is upon him who alleges it." Alexander v. Andrews, 64 S.E.2d 487, 491 (W. Va. 1951).

EPC asserts a variety of theories under which knowledge of its competing interest should be imputed to Prima. First, it contends that language in the Memorandum and the Assignment ought to have put Prima on notice of a potential competing claim, thereby triggering a duty to conduct a title search beyond the record. This is a reference to a form of constructive notice known as inquiry notice. Inquiry notice exists "when a prospective buyer has reasonable grounds to believe that property may have been conveyed in an instrument not of record . . . ." Eagle Gas Co. v. Doran & Assocs., Inc., 387 S.E.2d 99, 102 (W. Va. 1989). In such cases, purchasers must "use reasonable diligence to determine whether such previous conveyance exists." Id.

EPC contends that because language within the Memorandum referenced the Assignment itself, Prima was charged with inspecting that document as well. West Virginia's recording statute requires only the filing of a memorandum noting a transfer of real property and not the actual assignment itself. See W. Va. Code § 40-1-8. As such, a memorandum normally constitutes the complete notice of a transfer and is all that prospective purchasers need review in order to satisfy due diligence. However, several West Virginia cases have held that in certain circumstances, references in the memorandum to a competing interest may require the purchaser to conduct further review outside the record. See In re Restaurant Assocs., L.L.C., No. 1:06CV53, 2007 WL 951849, at *4 (N.D. W. Va. Mar. 28, 2007) (holding that if there exist "reasonable grounds to believe th[e] property may have been conveyed in an instrument not of record" the purchaser "may be charged with searches beyond the record") (quoting Eagle Gas Co, 387 S.E.2d at 102); see also Syl. pt. 1, Pocahontas Tanning Co. v. St. Lawrence Boom & Mfg. Co., 60 S.E. 890 (W. Va. 1908) ("Whatever is sufficient to direct the attention of a purchaser to prior rights and equities of third parties, so as to put him on inquiry into ascertaining their nature, will operate as notice.").

In In re Restaurant, the recording memorandum noted that the transfer was "subject to any and all exceptions,

19

reservations, restrictions, easements, rights-of-way and conditions as contained in prior deeds of conveyance in this chain of title." 2007 WL 951849, at *4. One of the prior deeds within the chain of title referenced unrecorded covenants. Id. The court reasoned that the purchasers should have inquired further about the unrecorded deeds, given that the record specifically mentioned their existence. Id. at *5.

This case is readily distinguishable from In re Restaurant. Although the Memorandum mentioned the Assignment, unlike in In re Restaurant it did not reference other documents containing information about competing interests. The Memorandum merely mentions the Assignment in passing, noting that the Assignment was the actual transfer document. Without more, there was nothing to raise Prima's suspicions about a possible competing claim and give it cause to consult beyond the record. Accordingly, we agree with the district court that the reference in the Memorandum would not have placed a reasonably prudent purchaser on notice of EPC's competing claim.

Furthermore, even assuming that the language of the Memorandum created a duty to consult the actual Assignment, nothing within the Assignment indicated the existence of a competing ownership claim. The Assignment contains the following provision: "a portion of [the transferred] Land and Wells are subject to certain contractual obligations with either

20

CNG Transmission Corporation or CNG Producing Company."[5] Contrary to EPC's assertions, this notation is insufficient to require a purchaser to inquire further about the nature of these contractual obligations. There is no indication that the term "contractual obligations" referred to potential ownership interests in the gas rights to Blackshere, nor does the language state which of the many leases and wells conveyed along with Blackshere might have been subject to such obligations. We deem these non-specific references to contractual obligations insufficient to cause a reasonable buyer to conduct a further investigation outside the record.[6]

EPC also argues more generally that Prima's title inquiry was unreasonably cursory and fell short of due diligence. Prior to purchasing its interest in the property from Cobham in 2004, Prima retained attorney Richard Starkey to investigate Blackshere's chain of title. Although Mr. Starkey testified that he conducted only an "abbreviated" review, he did consult

---

[5] CNG Transmission Corporation is a predecessor-in-interest of EPC.

[6] EPC also reiterates its argument, addressed above, that the "rights" section of Exhibit B, which listed only "oil" rights for Blackshere's wells, indicated that the transfer did not include the gas rights. From this, EPC contends that Prima was on notice of at least the possibility of a competing claim and therefore should have engaged in additional inquiry. For the same reasons explained above, EPC's argument on this point is not compelling.

21

the relevant county records to ensure that Cobham had obtained good title from Pennzoil in 1996. Regardless of the extensiveness of Mr. Starkey's review, however, no amount of searching would have revealed EPC's competing claim, since it is undisputed that the 1901 and 1902 indentures were never recorded. As the district court noted, a purchaser is not punished for failing to conduct due diligence when all reasonable inquiries would nevertheless have failed to uncover a competing claim.[7] That is exactly the situation here, and, accordingly, knowledge of EPC's claim cannot be imputed to Prima.

EPC offers three final arguments for why Prima had notice of EPC's competing claim and is not a BFP. First, EPC asserts that Mr. Starkey was aware of the "legend and lore" among mining interests in northern West Virginia that gas rights to large tracts of property had been severed in the early 20th century and transferred to Hope.[8] This argument has no legal

---

[7] EPC's argument that had Prima consulted Hope's chain of title it would have discovered the 1965 conveyance between Hope and Consolidated Gas is irrelevant given that the 1965 deed does not mention the Blackshere Lease.

[8] Mr. Starkey's knowledge may be imputed to Prima. See Morgan-Gardner Elec. Co. v. Beelick Knob Coal Co., 112 S.E. 587, 591 (W. Va. 1922) ("The law imputes to the principal, and charges him, with all notice or knowledge relating to the subject matter of the agency which the agent acquires or obtains (Continued)

significance.  See Pocahontas Tanning, Inc., 60 S.E. at 893 (explaining that "vague rumor or mere surmises are insufficient in themselves" to create constructive notice).  While Starkey admitted having knowledge of these rumors, he testified that in thirty years of working in the oil and gas industry in the area he had never seen the alleged severance applied.  Such non-specific conjecture is clearly insufficient to constitute constructive notice of a competing interest.

Next, EPC argues that its operation of two gas wells on the property constituted constructive notice of its claim.  Notice may be established when a reasonable physical inspection of the premises would have yielded information of a competing claim. See Bailey v. Banther, 314 S.E.2d 176, 181 (W. Va. 1983). Representatives from Prima toured the property prior to the 2004 Assignment, spending several days visiting Cobham well sites and traversing numerous access roads and found no sign of EPC's two wells.  This is unsurprising given the nature of the property, which consists of 3,800 acres of heavily forested, undeveloped land.  As such, we agree with the district court that Prima conducted due diligence in its inspection of the site and that

---

while acting as such agent and within the scope of his authority[.]").

EPC's operation of the two wells did not amount to constructive notice of its competing claim.

Lastly, EPC argues that Prima purchased its interest at such a discount that it must have known it was getting something less than clean title to the entire estate. Prima paid $250,000 and 250,000 shares of Trans Energy stock for rights to the Lease, which EPC compares with the $6,000,000 Prima later spent to build a new well on the property. To the extent that purchase price may be considered in determining BFP status under West Virginia law, see Wetzel v. Watson, 328 S.E.2d 526, 530 n. 4 (W. Va. 1985) ("[a] valuable consideration, however small, if bargained for in good faith in the absence of fraud will be sufficient to sustain a contract"), we again agree with the district court that unique circumstances in the price and estimated abundance of natural gas in the region offer a reasonable explanation for any increased value of the Lease rights.[9] With this background in mind, we hold that the purchase price fails to establish constructive notice.

For all these reasons, we affirm the district court's decision that Prima was a BFP in 2004 and therefore holds

---

[9] In 2004, the United States Geological Survey estimated that 1.9 trillion cubic feet of gas existed in Blackshere's surrounding region. According to the plaintiffs, a recent estimate is 141 trillion cubic feet.

24

superior title to the Blackshere Lease by virtue of its unbroken, recorded chain of title.

C.

EPC has also challenged a number of the district court's procedural rulings.  Specifically, EPC contests the denial of its motion for an extension of time to complete discovery and defer consideration of the plaintiffs' summary judgment motion, and the denial of its motion for leave to file a supplemental brief in support of its summary judgment motion and against the plaintiffs' summary judgment motion.[10]  We review both rulings for abuse of discretion, reversing only if there is a clear abuse of discretion or the real possibility that a party was unfairly prejudiced by the decisions.  See Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006); Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995).  We have reviewed the parties' arguments and the record and find that we are in agreement with the decisions of the district court, as explained in its two opinions on the matters.  See Trans Energy, Inc. v. EQT Prod. Co., No. 1:11cv75, 2012 WL 5906649 (N.D. W. Va. Nov. 26, 2012); Trans Energy, Inc. v. EQT Prod. Co., No. 1:11cv75, 2012 WL 5906603 (N.D. W. Va. Nov. 26,

---

[10]  The defendant also challenges the grant of the plaintiffs' motion in limine to exclude any evidence or argument of punitive damages.  In light of our ruling on the merits in favor of the plaintiffs, we need not consider this issue.

25

2012).  Accordingly, we affirm the denial of the defendant's motions.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Trans Energy, Republic Partners, and Prima, but vacate the judgment with respect to REV, whom we dismiss with prejudice.  We also affirm the district court's challenged procedural rulings.

<u>AFFIRMED IN PART AND
VACATED IN PART</u>