# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**July 30, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**OCCIDENTAL PETROLEUM,**
**successor in interest to KERR-MCGEE CORPORATION,**
**Defendant Below, Petitioner**

**v.) No. 23-ICA-375**     (Cir. Ct. of Wetzel Cnty. Case No. CC-52-2021-P-23)

**JOHN L. TUSTIN and JONATHAN A. TUSTIN,**
**Plaintiffs Below, Respondents**

## MEMORANDUM DECISION

Petitioner Occidental Petroleum ("Occidental") appeals two orders from the Circuit Court of Wetzel County. The first is the June 28, 2023, order denying its motion for summary judgment and granting Respondents John L. Tustin ("Mr. Tustin") and Jonathan A. Tustin's (collectively "Tustins") motion for summary judgment. The second is the circuit court's July 25, 2023, order denying Occidental's motion to alter or amend the summary judgment order. The Tustins filed a response.[1] Occidental filed a reply. The issue on appeal is whether the circuit court erred in its finding that the Tustins were bona fide purchasers of Occidental's fractional ownership interest of an oil and gas estate underlying a seventy-three-acre parcel of land ("subject tract").[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case began on October 4, 2021, when the Tustins filed an action in circuit court seeking to quiet the title to the oil and gas interests to seventy-three contiguous acres of

---

[1] Occidental Petroleum is represented by Mark A. Sadd, Esq., and Ramonda C. Marling, Esq. The Tustins are represented by Kerri C. Sturm, Esq., and Trisha R. Hudkins, Esq.

[2] The documents in the chain of title for the subject tract interchangeably state that this tract contains seventy-two or seventy-three acres "more or less." This is not disputed by the parties. Thus, at times, our recitation of the chain of title may refer to this tract of land as containing seventy-two or seventy-three acres.

1

land in Wetzel County.[3] In their complaint, they asserted that they owned 100 percent of the subject tract as bona fide purchasers of the property pursuant to West Virginia Code § 40-1-9 (1963).[4]

In their complaint, the Tustins named five defendants, whose alleged ownership interests potentially clouded their title to the subject tract. The claims against four of those defendants were settled in favor of the Tustins, leaving Occidental as the only remaining defendant.

The parties filed cross motions for summary judgment. The Tustins sought a declaratory judgment that they held title to the entire tract, while Occidental asserted that it owned a three-sixteenths interest in the oil and gas estate. Occidental based its ownership interest from an unrecorded 1898 deed that it discovered in the paper business files of its predecessor in interest, Kerr-McGee Corporation ("KMC"). They also argued that Mr. Tustin admitted in his deposition testimony that he failed to conduct a title search before purchasing the property in 1987; rather, he relied upon the sellers' representation that he was purchasing the complete interest, as well as his own observation that there were no oil and gas wells on the property when he inspected the property prior to purchase.[5]

On June 28, 2023, the circuit court granted summary judgment in favor of the Tustins. In its summary judgment order, the circuit court found that Occidental's unrecorded 1898 deed was legally insufficient to provide the Tustins notice of its competing interest in the subject tract and, thus, it could not be used to defeat the Tustins' claim to Occidental's three-sixteenths interest as bona fide purchasers. In support of this conclusion, the circuit court found that the evidence established the Tustins' chain of title as follows.

---

[3] Mr. Tustin purchased his family's farm in 1987. Approximately thirty years later, a third party approached the Tustins about acquiring their oil and mineral interests in the tract. It was then that they first became aware of the clouded title when the potential purchaser discovered a tax assessment with the name M.L. Benedum. This discovery led to the underlying civil action.

[4] This version of West Virginia Code § 40-1-9 was in effect in 1987, at the time Mr. Tustin purchased his interest. We note that in its present form, West Virginia Code § 40-1-9 (2015) contains minor modifications but is substantively unchanged from the former version applied herein.

[5] Although argued at summary judgment, the circuit court's summary judgment order does not specifically address Mr. Tustin's failure to perform a title search in 1987. However, under the facts of this case, we find that the omitted act of a title search does not change the outcome of this case below or on appeal.

It found that the subject tract was originally part of a larger parent tract until May 10, 1886, when A.M. Evans and Elma Evans, his wife, conveyed the subject tract, containing seventy-two acres, two roods and sixteen perches, more or less, to R.L. Adams. Thereafter, the tract was subject to the following conveyances: (1) by deed dated March 24, 1891, E.B. Snodgrass, Special Commissioner, conveyed the subject tract to S.A. Carney; (2) by deed dated March 31, 1891, S.A. Carney and S.E. Carney, his wife, conveyed the subject tract to Harvey Villers; (3) by deed dated February 15, 1933, Harvey Villers conveyed the subject tract to Homer E. Villers, reserving, "[w]hat is known as the Pittsburgh vein of coal and the oil and gas rights, together with rights of way for operating same. These reservations shall remain as property of party of the first part"; and (4) according to Appraisement Book 12, Page 19, and Bond Book 10A, Page 100, Harvey Villers died intestate on May 26, 1935, leaving George Villers, his son, as his sole heir at law.

The circuit court's order noted that through several subsequent conveyances, the Tustins acquired their 100% interest in the oil and gas for the subject tract. Specifically, it found that by deed dated July 31, 1962, George Villers, widower, conveyed all of his oil and gas interests within and underlying the subject tract containing seventy-two acres, two roods and sixteen perches of land, more or less, to Homer E. Villers. Then, by deed dated December 28, 1973, Homer E. Villers and Mabel L. Villers, his wife, conveyed this interest to Ronald E. Barth. Thereafter, by deed dated December 29, 1987, Ronald E. Barth and Bertha J. Barth, his wife, conveyed the subject tract to John L. Tustin. Through a deed dated March 26, 1988, John L. Tustin, single, conveyed the subject tract's surface to John Joseph Autrey, Jr., reserving, "[a]ll the coal, oil, gas and other minerals within and underlying the property hereby conveyed." Finally, by straw deeds dated October 29, 2020, John L. Tustin conveyed all the coal, oil, gas and other mineral interest in the subject tract to Philip J. Bowser, who then executed a second straw deed which conveyed all the coal, oil, gas, and other mineral interest in the subject tract to John L. Tustin and Jonathan A. Tustin, as joint tenants with right of survivorship. Notably, these deeds all include similar language referring to the subject tract as "containing seventy-two acres, two roods and sixteen perches, more or less."

The circuit court's order also addressed Occidental's alleged chain of title. It found that this chain of title was comprised of documents that were either unrecorded, unsigned, or did not exist. At the heart of Occidental's chain of title was an unrecorded deed dated March 30, 1898, which purported to convey from Harvey Villers and Marinda Villers, his wife, "all of the one[-]sixteenth part of the oil and one fourth of the gas" in and under the subject tract to J.L. Fisher ("1898 Deed"). Occidental also relied on an unsigned deed from April of 1905, which contained terms conveying the one-sixteenth interest J.L. Fisher

3

acquired under the 1898 deed to M.L. Benedum ("1905 Deed").[6] [7] Based upon the 1905 Deed, Occidental maintained that three subsequent documents established it as a successor in interest to M.L. Benedum: (1) the June 5, 1948, Last Will & Testament of M.L. Benedum ("Benedum Will"); (2) a deed dated December 20, 1968, between grantors, the Benedum Will's executors and trustees, and grantee, Benedum-Trees Oil Company ("1968 Deed"); and (3) a January 1, 1988, deed between grantor, Benedum-Trees Oil Company, and grantee, KMC ("1988 Deed").

On this issue, the circuit court first found that the 1905 Deed was neither executed nor recorded, and that the only known copy of this document was discovered by Occidental in the paper business files of KMC. Addressing the other three documents, the circuit court found that none of them expressly conveyed any interest in the seventy-tree-acre tract. Namely, it determined the Benedum Will did not list or identify the subject tract as part of the residue of M.L. Benedum's estate; while the 1968 Deed conveyed all right, title, and interest held to all of the oil and gas leasehold interests held by M.L. Benedum at his death to Benedum-Trees Oil Company, no interest in the subject tract was identified as part of his estate; and the 1988 Deed, which conveyed Benedum-Trees Oil Company's mineral interests, including the mineral interest to an "undetermined [seventy-three-acre] tract of land" to KMC, was not executed and recorded until after Mr. Tustin acquired his recorded interest to the subject tract in 1987.

The circuit court determined that Occidental had failed to establish it purchased KMC in 2019 when it acquired Anadarko US Offshore, LLC, who had allegedly purchased KMC in 2006. Occidental also did not produce any documentation to establish that it acquired its claimed three-sixteenths interest through those transactions. Instead, the only evidence Occidental produced was an attorney's letter dated November 23, 1959, and addressed to Benedum-Trees Oil Company, which stated that a signed copy of the 1905 Deed between J.L. Fisher and M.L. Benedum could not be found. The letter further stated: "[a]ssuming a well was drilled within such time as to validate the deeds from Villers to Fisher and from Fisher to Benedum then Mr. Benedum acquired 1/16 of all the oil and 1/4 of the gas by these unrecorded deeds, subject to the rights of subsequent bona fide purchasers." According to the circuit court, this 1959 letter placed Benedum-Trees Oil

---

[6] The documents in the record also refer to M.L. Benedum as Michael L. Benedum or Michael Late Benedum. There is no dispute that these designations refer to the same individual. For clarity, we will use M.L. Benedum throughout this decision, including for those documents where one of the other designations was used.

[7] The circuit court's order and the parties' briefs on appeal inadvertently identify the 1905 Deed as a document from the year 1901. However, upon review of the record, this Deed plainly reflects it was "[m]ade this 22d day of April, A.D. 1905[.]" In this decision, our references to this document have been modified to reflect the correct year it was created.

Company, a predecessor in title to Occidental, on notice that its title to the mineral interest was speculative because the letter acknowledged that the 1898 Deed was not recorded and that the 1905 Deed could not be located. Further, Occidental's predecessors in title had failed to cure the title defects in the subject tract prior to Mr. Tustin acquiring his interest that is now jointly held by the Tustins.

Turning to the Tustins' bona fide purchaser claim, the circuit court rejected Occidental's position that the Tustins were not bona fide purchasers based upon Mr. Tustin's statements during his deposition related to his lack of title search, reliance on the sellers' representations, and his personal observation of no gas or oil wells on the property. The circuit court also rejected Occidental's contention that the Tustins had constructive notice of M.L. Benedum's alleged interest from the tax assessment bearing his name. Pointing to prior decisions of our Supreme Court of Appeals, the circuit court noted that constructive knowledge is imputed to a purchaser if it could have been acquired through the exercise of ordinary diligence. *See Fanti v. Welsh*, 152 W. Va. 233, 239, 161 S.E.2d 501, 505 (1968).

The circuit court concluded that even if the tax assessment had been discovered, no purchaser could have located the 1898 or 1905 Deeds because those documents were exclusively in the possession of Occidental and its predecessors. As such, no amount of due diligence would have discovered those unrecorded documents. Therefore, there was no notice of Occidental's predecessor in title's interest in the subject tract when Mr. Tustin made his purchase in 1987. The circuit court further found that Occidental had failed to establish its own chain of title; it also rejected Occidental's estoppel by deed argument based upon the decision in *Wellman v. Tomblin*, 140 W. Va. 342, 84 S.E.2d 617 (1954). In sum, the circuit court held that the Tustins owned 100 percent of the subject tract, enjoined Occidental from claiming any right to the property, voided the unrecorded 1898 and 1905 Deeds, and removed any cloud to the Tustins' title. This appeal followed.

We apply a *de novo* standard of review to both orders on appeal. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 190, 451 S.E.2d 755, 756 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."); *W. Va. Fire & Cas. Co. v. Mathews*, 209 W. Va. 107, 111, 543 S.E.2d 664, 668 (2000) (A *de novo* standard of review applies to appeal of order denying motion to alter or amend summary judgment).

In conducting a *de novo* review, this Court applies the same standard for granting summary judgment that a circuit court must apply, and that standard states, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *United Bank, Inc. v. Blosser,* 218 W. Va. 378, 383, 624 S.E.2d 815, 820 (2005) (quoting Syl. Pt. 2, *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756). "Summary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden

to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.,* 194 W. Va. 52, 56, 459 S.E.2d 329, 333 (1995). "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Id.* at 60, 459 S.E.2d at 337 (quotations and citations omitted).

On appeal, Occidental argues that the circuit court erred by finding the Tustins had met their burden of proof as bona fide purchasers, as well as by placing the burden of proof upon Occidental to prove its chain of title. Upon review, we disagree with both arguments and find no error by the circuit court.

Here, it is undisputed that the 1898 and 1905 Deeds were either unrecorded, unexecuted, or both. Regarding unrecorded instruments, West Virginia Code § 40-1-9 (1963) states:

> Every such contract, every deed conveying any such estate or term, and every deed of gift, or trust deed or mortgage, conveying real estate shall be void, as to creditors, and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county wherein the property embraced in such contract, deed, trust deed or mortgage may be.

This principle is well established in our jurisprudence. "The purpose of the statute is to protect a bona fide purchaser of land against creditors of the grantor, and against other persons to whom the grantor might have undertaken to execute title papers pertaining to the land embraced in the recorded instrument." *Bank of Marlinton v. McLaughlin,* 121 W.Va. 41, 44, 1 S.E.2d 251, 253 (1939). *See also Alexander v. Andrews*, 135 W. Va. 403, 407, 64 S.E.2d 487, 490 (1951) (finding that under West Virginia Code § 40-1-9, an unrecorded deed is void as to creditors and subsequent purchasers for valuable consideration without notice, until such time as deed is duly recorded); *City of Bluefield v. Taylor*, 179 W. Va. 6, 10, 365 S.E.2d 51, 55 (1987) (a deed conveying real estate is void against creditors and purchasers until the deed is duly recorded); *Gill v. Colton*, 12 F.2d 531, 534 (4th Cir. 1926) ("[I]n West Virginia[,] it is well settled that an unrecorded deed is void as to a subsequent purchaser for value and without notice.").

Regarding the law on bona fide purchasers, our state's highest court has found:

> A bona fide purchaser of land is "'one who purchases for a valuable consideration, paid[,] or parted with, without notice of any suspicious circumstances to put him upon inquiry.'" *Stickley v. Thorn,* 87 W. Va. 673, 678, 106 S.E. 240, 242 (1921) [quoting Syl. Pt. 2, *Carpenter Paper Co. v. Wilcox*, 50 Neb. 659, 70 N. W. 228 (1897)]; *See also* Syl. pt. 2, in part, *Hupp v. Parkersburg Mill Co.*, 83 W. Va. 490, 98 S.E. 518 (1919) ("[T]he

6

possession under the unrecorded deed is apparently consistent with that of the grantor having record title to all of the land on which there is such concurrent possession at different places, wherefore a purchaser from him is under no duty to prosecute his inquiry as to the title beyond the record and the possession by the holder of the recorded title."); *Simpson v. Edmiston*, 23 W. Va. 675, 680 (1884) ("[A] bona fide purchaser is one who buys an apparently good title without notice of anything calculated to impair or affect it[.]"); Black's Law Dictionary 1271 (8th ed. 1999) (defining a "bona fide purchaser" as "[o]ne who buys something for value without notice of another's claim to the property and without actual or constructive notice of any defects in or infirmities, claims, or equities against the seller's title; one who has in good faith paid valuable consideration for property without notice of prior adverse claims."). As previously held by this Court, and more recently reiterated, "'[a] *bona fide* purchaser is one who actually purchases in good faith.' Syl. pt. 1, *Kyger v. Depue,* 6 W. Va. 288 (1873)." *Subcarrier Commc'ns, Inc. v. Nield,* 218 W. Va. 292, 300, 624 S.E.2d 729, 737 (2005).

*Wolfe v. Alpizar*, 219 W. Va. 525, 529-30, 637 S.E.2d 623, 627-28 (2006).

In this case, Occidental argues that the Tustins cannot maintain their status as bona fide purchasers because there was notice provided in the county records of the interest it now claims. On this issue, Occidental relies on Mr. Tustin's failure to have a title search performed in 1987. It maintains that had a proper title search been performed, constructive notice of Occidental's claimed interest would have been discovered by the tax assessment for the property under the name M.L. Benedum. It was also argued that based upon stories from his family members, Mr. Tustin had actual notice of Occidental's interest in the subject tract. Occidental also relied upon language from Syllabus Point 3 of *Oelschlager v. Francis*, 247 W. Va. 756, 885 S.E.2d 887 (2023), which states:

A party is not entitled to protection as a bona fide purchaser, without notice, unless he looks to every part of the title he is purchasing, neglecting no source of information respecting it which common prudence suggests. Syl. Pt. 2, *Pocahontas Tanning Co. v. St. Lawrence Boom & Mfg. Co.*, 63 W. Va. 685, 60 S.E. 890 (1908).

*Id.* at 757, 885 S.E.2d at 888, syl. pt. 3.

The circuit court rejected this argument, finding that even if the tax assessment had been discovered by Mr. Tustin prior to his purchase of the property in 1987, the assessment would not have provided any notice of Occidental's claimed interest because the 1898 and 1905 Deeds were in the possession of Occidental's predecessors in interest and the Deeds were never recorded. The circuit court also found the lack of notice in this case was further

compounded by Occidental's failure to establish its chain of title. We agree with the circuit court's conclusion that Mr. Tustin had no notice of this claimed interest.

With respect to actual notice, "'[a]ll of the cases bearing upon the subject of notice hold that a showing of [actual] notice is made where a person is charged with facts and circumstances which require him to make inquiry as to matters of which notice or lack of notice is required.' *Alexander v. Andrews*, 135 W. Va. 403, 412, 64 S.E.2d 487, 492 (1951)." *U.S. Exploration, LLC v. Griffin Producing Co.*, 243 W. Va. 318, 325, 844 S.E.2d 89, 96 (2020). Moreover, in *Eagle Gas Company v. Doran & Associates, Inc.*, 182 W. Va. 194, 387 S.E.2d 99 (1989), our Supreme Court of Appeals stated:

> In general[,] a party without *actual* notice may rely upon record titles in the office of the clerk of the county commission of the county in which the land is located. W. Va. Code [§] 40-1-9 [1963]. Nonetheless, when a prospective buyer has reasonable grounds to believe that property may have been conveyed in an instrument not of record, he is obliged to use reasonable diligence to determine whether such previous conveyance exists.

*Id*. at 197-98, 387 S.E.2d at 102-03 (citations omitted).

Turning to constructive notice, it has been defined as:

> Such notice as is implied or imputed by law, usually on the basis that the information is a part of a public record or file, as in the case of notice of documents which have been recorded in the appropriate registry of deeds or probate. Notice with which a person is charged by reason of the notorious nature of the thing to be noticed, as contrasted with actual notice of such thing. That which the law regards as sufficient to give notice and is regarded as a substitute for actual notice. John W. Fisher, II, *The Scope of Title Examination in West Virginia: Can Reasonable Minds Differ?*, 98 W.Va. L.Rev. 449, 500 (1996).

*In re Williams*, 213 W. Va. 780, 784, 584 S.E.2d 922, 926 (2003). From an evidentiary perspective, the Supreme Court of Appeals has held that to prove notice, the rule is:

> When a claim to protection as a bona fide purchaser for value and without notice is involved, the burden is on the party denying the validity of the purchase to prove notice of his equity, and upon the other party to prove good faith and payment of an adequate consideration. He who avers that another purchased with notice of his superior right has the burden of proving such notice, either actual or constructive[,] while such other must prove that he is a complete purchaser for a valuable consideration.

*Oelschlager*, 247 W. Va. at 763, 885 S.E.2d at 894 (citations and quotations omitted). *See also Alexander*, 135 W. Va. at 409-10, 64 S.E.2d at 491(citations and quotations omitted) ("the person who asserts that [actual] notice has been had must establish the facts and circumstances which clearly indicate notice . . . . The burden of proving notice to a purchaser for value is upon him who alleges it.").

Contrary to Occidental's argument, our law clearly states that it had the burden of proving the Tustins had notice of its interest; whereas the Tustins were required to prove good faith and adequate consideration. Here, there is no argument as to whether the Tustins established good faith and valuable consideration for their purchase.[8] Thus, we only have to examine the record to determine whether Occidental presented evidence sufficient to raise a disputed issue of material fact as to whether the Tustins had "notice of [its] equity." *Oelschlager*, 247 W. Va. at 763, 885 S.E.2d at 894. Upon review, we find nothing in the appendix record from which a reasonable inference may be drawn that the Tustins had any actual or constructive knowledge of Occidental's interest.

Our law recognizes that notice may be established where a reasonable physical inspection of the premises *would have* given a purchaser notice of a competing claim. *Trans Energy, Inc. v. EQT Prod. Co.*, 743 F.3d 895, 906-07 (4th Cir. 2014) (citing *Bailey v. Banther*, 173 W. Va. 220, 224-25, 314 S.E.2d 176, 181 (1983)) (emphasis added). In this case, Mr. Tustin's deposition testimony establishes that he did not discover any oil and gas wells during physical inspection of the property and there is nothing in the record which refutes this point or creates a genuine issue of material fact.

Moreover, "a purchaser is not punished for failing to conduct due diligence when all reasonable inquiries would nevertheless have failed to uncover a competing claim." *Trans Energy, Inc.*, 743 F.3d at 906. Here, it is undisputed that Mr. Tustin did not conduct a title search prior to when he purchased the property in 1987. However, it is uncontroverted that the 1898 and 1905 Deeds are unrecorded and solely within Occidental's possession. Thus, even if the M.L. Benedum tax assessment had been discovered, no amount of due diligence by Mr. Tustin would have revealed Occidental's competing claim, since the Deeds were not recorded. Therefore, we find no error in the circuit court's determination that Occidental failed to establish notice of their competing claim.

_____

[8] While mentioned in passing, Occidental's brief does not directly challenge whether the Tustins established that they acquired their mineral interest for consideration and in good faith. Therefore, to the extent it is raised on appeal, we find any challenge to those issues to be waived. "'Although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.' *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996)." *Maher v. Camp 4 Condo. Ass'n, Inc.*, 249 W. Va. 433, ___ n.8, 895 S.E.2d 836, 842 n.8 (Ct. App. 2023).

Accordingly, we affirm the circuit court's June 28, 2023, and July 25, 2023, orders.

Affirmed.

**ISSUED:** July 30, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear